No. 24-1829

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

UNITED STATES OF AMERICA,
APPELLEE

V.

LILIAN GIANG,
DEFENDANT-APPELLANT

———————

ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————

BRIEF FOR THE UNITED STATES

———————

LEAH B. FOLEY
UNITED STATES ATTORNEY

DONALD C. LOCKHART
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3193

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ..................................................................... 1

    A.    Offense facts ................................................................... 1

    B.    Procedural history ......................................................... 5

SUMMARY OF ARGUMENT ..................................................................... 5

ARGUMENT ................................................................................................. 7

I.    Ample evidence proved the mailing element of mail fraud ........................ 7

II.    Admission of the structuring evidence was not an abuse of discretion ....... 11

    A.    Background ................................................................... 11

    B.    The evidence was highly probative, intrinsic, and not unfairly prejudicial ................................................................... 12

III.    The district court was not required to give an implicit bias instruction ...... 17

    A.    Background ................................................................... 17

    B.    There was no error, let alone plain error or an abuse of discretion.... 19

IV.    The remaining jury instruction claims are unavailing ............................ 22

    A.    Employee versus subcontractor .................................... 22

           1.    Background ................................................... 22

           2.    There was no plain or other error ..................... 24

    B.    Good faith versus intent to deceive ............................... 27

1. Background ....................................................................27

2. The *Goodchild* decision ...............................................28

3. The mail fraud count ....................................................29

4. The tax counts .............................................................31

CONCLUSION ...........................................................................35

CERTIFICATE OF COMPLIANCE ..........................................36

CERTIFICATE OF SERVICE ....................................................37

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Bryan v. United States*,
524 U.S. 184 (1998) ................................................................. 30

*Carter v. United States*,
530 U.S. 255 (2000) ................................................................. 29

*Cheek v. United States*,
498 U.S. 192 (1991) ........................................... 28-31, 33, 35

*Musacchio v. United States*,
577 U.S. 237 (2016) ................................................................. 31

*United States v. Abbas*,
100 F.4th 267 (1st Cir.),
*cert. denied*, 145 S. Ct. 319 (2024) ............................. 11, 14-15, 29

*United States v. Aboshady*,
951 F.3d 1 (1st Cir. 2020) ...................................................... 26

*United States v. Berroa*,
856 F.3d 141 (1st Cir. 2017) .................................................. 30

*United States v. Buoi*,
84 F.4th 31 (1st Cir. 2023) ...................................................... 7

*United States v. Caparotta*,
676 F.3d 213 (1st Cir. 2012) .................................................. 10

*United States v. Cardena*,
842 F.3d 959 (7th Cir. 2016) .................................................. 12

*United States v. Carter*,
19 F.4th 520 (1st Cir. 2021) .................................................. 33

*United States v. Casanova*,
886 F.3d 55 (1st Cir. 2018) .................................................. 20

iii

*United States v. Chanu,*
    40 F.4th 528 (7th Cir. 2022)......................................................30

*United States v. Chin,*
    15 F.4th 536 (1st Cir. 2021) ....................................................31

*United States v. Contenti,*
    735 F.2d 628 (1st Cir. 1984)......................................................9

*United States v. Correia,*
    55 F.4th 12 (1st Cir. 2022).........................................................7

*United States v. DeSimone,*
    699 F.3d 113 (1st Cir. 2012).....................................................16

*United States v. Díaz-Arias,*
    717 F.3d 1 (1st Cir. 2013).........................................................22

*United States v. Dockray,*
    943 F.2d 152 (1st Cir. 1991)..................................................30-31

*United States v. Doe,*
    741 F.3d 217 (1st Cir. 2013).....................................................16

*United States v. Epstein,*
    426 F.3d 431 (1st Cir. 2005).....................................................14

*United States v. Facteau,*
    89 F.4th 1 (1st Cir. 2023)....................................................20, 25

*United States v. Falcón-Nieves,*
    79 F.4th 116 (1st Cir. 2023) .................................................7, 29

*United States v. Gay,*
    967 F.2d 322 (9th Cir. 1992)....................................................30

*United States v. Gelin,*
    712 F.3d 612 (1st Cir. 2013).....................................................20

*United States v. Goodchild,*
    25 F.3d 55 (1st Cir. 1994).........................................................28

iv

*United States v. Graham,*
  680 F. App'x 489 (8th Cir. 2017)..............................................................22

*United States v. Hebshie,*
  549 F.3d 30 (1st Cir. 2008) ........................................................................9

*United States v. Jae Shik Cha,*
  97 F.3d 1462, 1996 WL 525374 (9th Cir. 1996).........................................16

*United States v. Karani,*
  984 F.3d 163 (1st Cir. 2021)..........................................................30-31, 33

*United States v. Martínez-Hernández,*
  118 F.4th 72 (1st Cir. 2024) ......................................................................10

*United States v. Maxwell,*
  89 F.4th 671 (8th Cir. 2023).......................................................................22

*United States v. McLellan,*
  959 F.3d 442 (1st Cir. 2020).......................................................................32

*United States v. Meade,*
  175 F.3d 215 (1st Cir. 1999).......................................................................30

*United States v. Mercado,*
  412 F.3d 243 (1st Cir. 2005).......................................................................20

*United States v. Mills,*
  2022 WL 2901005 (3d Cir. July 22, 2022) .................................................16

*United States v. Mitchell,*
  2023 WL 3620913 (11th Cir. May 24, 2023)..............................................22

*United States v. Morrow,*
  39 F.3d 1228 (1st Cir. 1994).........................................................................9

*United States v. Nishida,*
  2021 WL 3140331 (9th Cir. July 26, 2021) ................................................22

*United States v. Pabon,*
  819 F.3d 26 (1st Cir. 2016) ........................................................................10

*United States v. Parker*,
872 F.3d 1 (1st Cir. 2017) ........................................................................20

*United States v. Pennue*,
770 F.3d 990 (1st Cir. 2014)......................................................................33

*United States v. Pimental*,
380 F.3d 575 (1st Cir. 2004).......................................................................9

*United States v. Ramírez–Rivera*,
800 F.3d 1 (1st Cir. 2015) ..........................................................................11

*United States v. Rathbun*,
98 F.4th 40 (1st Cir. 2024) ................................................................. 10, 20

*United States v. Reardon*,
111 F.4th 142 (1st Cir. 2024)......................................................................10

*United States v. Ristovski*,
211 F.3d 1271 (6th Cir. 2000),
2000 WL 491513, *as amended* (May 8, 2020)............................................16

*United States v. Rivera-Gomez*,
67 F.3d 993 (1st Cir. 1995) ........................................................................16

*United States v. Rodríguez-Soler*,
773 F.3d 289 (1st Cir. 2014).......................................................................15

*United States v. Santiago-González*,
825 F.3d 41 (1st Cir. 2016) ................................................................. 10-11

*United States v. Sasso*,
695 F.3d 25 (1st Cir. 2012) ........................................................................33

*United States v. Sawyers*,
740 F. App'x 585 (9th Cir. 2018)...............................................................22

*United States v. Sirang*,
70 F.3d 588 (11th Cir. 1995)......................................................................30

*United States v. Slade*,
980 F.2d 27 (1st Cir. 1992) ........................................................................20

*United States v. Souza*,
749 F.3d 74 (1st Cir. 2014) ................................................................. 13-14

*United States v. Vázquez-Soto*,
939 F.3d 365 (1st Cir. 2019) ................................................................... 13

*United States v. Weadick*,
15 F.4th 1 (1st Cir. 2021) ......................................................................... 12

*United States v. Wright*,
937 F.3d 8 (1st Cir. 2019) ........................................................................ 26

## STATUTES, RULES AND REGULATIONS

18 U.S.C. § 1029(a)(3) .............................................................................. 28

18 U.S.C. § 1341 ............................................................................... 5, 29

18 U.S.C. § 1343 ..................................................................................... 29

18 U.S.C. § 1344 ..................................................................................... 29

26 U.S.C. § 7201 ..................................................................................... 30

26 U.S.C. § 7202 ....................................................................................... 5

26 U.S.C. § 7203 ..................................................................................... 30

31 U.S.C. § 5324(a)(3) .............................................................................. 13

Fed. R. Evid. 104(b) ............................................................................ 11-12

Fed. R. Evid. 403 .............................................................................. 11, 15

Fed. R. Evid. 404(b) ...................................................................... 11, 14-16

Fed. R. Evid. 404(b)(2) ............................................................................ 15

31 C.F.R. § 1010.311 .................................................................................. 3

## STATEMENT OF THE ISSUES

1.      Ample evidence proved the mailing element of mail fraud.

2.      The district court did not abuse its discretion in permitting the government to introduce evidence that banks are required to report cash withdrawals of more than $10,000 and that defendant was well aware of that threshold when she repeatedly withdrew amounts just under it to pay her employees under the table and thereby evade her tax obligations.

3.      The district court did not plainly err or abuse its discretion in declining to give an instruction on implicit bias.

4.      The remaining instructional claims are unavailing.

## STATEMENT OF THE CASE

### A.      Offense facts

Lilian Giang was the sole owner of a temporary employment agency called Able Temp Agency based in Quincy, Massachusetts. [JA: 206, 215, 230, 316, 332-333, 440, 479, 504; Ex. 4].[1] At trial, the government called nine witnesses, including former temp workers and Giang's daughter, who had handled the payroll. It also introduced over 100 exhibits. The evidence established as follows.

---

[1] The joint appendix is cited as "JA:__", the defense addendum as "DA:__", the government's addendum as "GA:__", docket entries as "ECF__", trial exhibits as "Ex.__", and the opening brief as "Br.__".

Giang placed her employees at local businesses who paid Able Temp Agency for their services on an hourly basis. [GA: 7, 9; JA: 203-215, 226-236, 266-275, 293-302, 441-471, 527-528]. Giang then paid the employees their wages and kept the balance. [GA: 8-12; JA: 270-275, 295-302, 316-330, 441-471, 508-514, 528-536]. Giang specifically agreed with one business that she was responsible for paying payroll taxes. [JA: 205-209, 214-215, 652].

Employers are required to withhold and pay over to the government: (a) income taxes on their employees' wages; and (b) one half of the Federal Insurance Contributions Act ("FICA") taxes for Social Security and Medicare. [JA: 412-421]. On a quarterly basis, employers must file an Internal Revenue Service (IRS) Form 941 reporting all wages and make the required payments. [JA: 420-421]. To evade this duty, Giang paid her employees partly by check and partly by cash and in some instances solely in cash and failed to report and pay taxes on the cash wages. [GA: 7-12; JA: 209-213, 234-236, 270-275, 284-285, 296-302, 316-330, 422-426, 441-471, 509-514, 654-677, 720-818; Exs. 8, 15-18, 46-49, 55-58, 61-94].[2] Between late 2015 and 2019, Giang withdrew more than $3 million in cash from her bank accounts and used the money to pay her employees under the table and thereby avoid paying over $800,000 in taxes. [GA: 12; JA: 450-471, 834-851].

---

[2] Giang also at times paid employees by personal check rather than by payroll check and did not withhold taxes on the former. [JA: 457-470].

Giang hid the total wages—including millions of dollars in cash payments and associated timesheets and invoices that would have revealed them—even from her own daughter who handled the payroll. [JA: 316, 318, 329-330, 349, 533]. And when Giang paid her employees in cash this was at a lower hourly rate—below minimum wage—because taxes were not going to be taken out of those wages. [JA: 209-211, 270-271, 284, 512]. Moreover, when Giang filed her corporate tax returns she reported much higher labor costs because in that context it was to her benefit to keep expenses high and reduce her corporate taxes. [JA: 426-431, 635-648; Exs. 3, 7, 51].

Other evidence left no doubt that Giang acted willfully in evading her tax obligations. Banks are required to report cash withdrawals of more than $10,000 to the government. [JA: 249-252; *see also* 31 C.F.R. § 1010.311]. Scores of times in the charged period, Giang (a) withdrew just under $10,000 (typically $8,000-$9,500) in a single transaction, and/or (b) made multiple withdrawals on a single day or adjacent days that exceeded $10,000 in the aggregate. [JA: 453-455, 834-853]. To take some examples from 2017, Giang withdrew $9,000 on November 2, $9,000 on November 3, $9,000 twice on November 6, $9,000 on November 10, $9,000 twice on November 13, $9,000 on November 17, $9,000 twice on November 20, $9,000 three times on December 4, and $9,000 on December 5. [JA: 843-844]. And to take some examples from 2018, Giang withdrew $9,500 twice on September 10 and $9,000 twice and $9,500 on October 9. [JA: 846-847]. On the other hand, Giang did

not withdraw more than $10,000 in a single transaction even once during the three-year period between October 6, 2015 and October 22, 2018. [JA: 834-847]. The obvious inference was that Giang did not want the banks to report her large cash withdrawals because that might tip off the government that she was paying her employees cash to evade taxes.

This was confirmed by a Rockland Trust teller who testified she discussed the $10,000 report threshold with Giang and that in October 2018 Giang admitted she was using the cash withdrawals to pay her employees, claiming some lacked bank accounts. [JA: 248-257, 820].

When asked on direct examination about making multiple withdrawals on a given day at different bank branches, Giang initially said "I don't remember" and "I don't think I would do that," but then admitted she did so because it was "convenient to me." [JA: 517]. And when the same subject was broached on cross-examination, Giang claimed variously that she could not remember making such withdrawals and that she only withdrew what she "needed" at the time. [JA: 534-540].

Meanwhile, Giang was also defrauding Travelers Indemnity Company, which serviced the state-mandated workers' compensation insurance that covered her employees. [JA: 350-372, 384-396]. The cost of the premium Giang paid depended in part on the amount of her payroll in a given year; the larger the payroll, the higher the premium. [JA: 353-356]. At the start of each yearly cycle, Travelers would

estimate Giang's premium. [JA: 355]. At the end of it, Giang would supply Travelers with her final payroll data for the period, omitting the cash wages and backing up her fraudulent claims with the false IRS Form 941s, which would lower her actual premium payments and result in refunds from Travelers. [JA: 355-372, 384-396]. By underreporting over $3 million in cash payroll, Giang cheated Travelers out of roughly $31,000 in premium payments. [JA: 391-396].

## B. Procedural history

A District of Massachusetts grand jury returned an indictment charging Giang with four counts of failure to collect and pay over employment taxes in violation of 26 U.S.C. § 7202, and one count of mail fraud in violation of 18 U.S.C. § 1341. [JA: 12-20]. After a three-day trial at which Giang attributed her tax and fraud crimes to a lack of sophistication and poor English language skills, a jury rejected that defense and convicted her on all counts after a one-hour deliberation. [JA: 611-612; ECF 79]. The district court (Stearns, J.), sentenced Giang to 18 months in prison and two years of supervised release. [JA: 9]. She timely appeals. [JA: 9]. Additional procedural details pertaining to the issues raised on appeal will be set out below.

## SUMMARY OF ARGUMENT

1.     The mailing element of mail fraud was satisfied when a representative of the victim insurance company testified that a key document was mailed to Giang and that a similar document had been mailed to her in three prior years.

2. The district court did not abuse its discretion in permitting the government to introduce evidence that banks are required to report cash withdrawals of more than $10,000 and that Giang was well aware of that threshold when she repeatedly withdrew amounts just under it to pay her employees under the table and thereby evade her tax obligations. There was no Rule 104(b) problem as Giang's claim here goes to weight not admissibility; the evidence was highly probative and in fact key proof that Giang knew she was violating the tax laws; it was intrinsic to—and indeed intertwined with—the tax crimes and admissible under Rule 404(b) even if considered extrinsic; and it was not unfairly prejudicial.

3. The district court did not plainly err or abuse its discretion in declining to give an implicit bias instruction. Giang's new claim that this deprived her of her "theory of the defense" is baseless, and such instructions are not required either as a general matter or under the circumstances presented here.

4. Giang's new claim that the district court should have instructed on the distinction between subcontractors and employees likewise fails the plain-error test because her defense was not keyed to that distinction. Her preserved challenge to one aspect of the district court's "good faith" instruction cannot succeed when the instructions are read as a whole, and any conceivable error was harmless beyond a reasonable doubt given (a) the surrounding tax instructions and (b) the irrefutable proof that Giang acted willfully.

# ARGUMENT

## I.    Ample evidence proved the mailing element of mail fraud

Giang argues [Br. 17-25] there was insufficient evidence to satisfy the mailing element of mail fraud. She is wrong.

In reviewing a preserved sufficiency claim, this Court "scrutinize[s] the evidence in the light most compatible with the verdict, resolve[s] all credibility disputes in the verdict's favor, and then reach[es] a judgment about whether a rational jury could find guilt beyond a reasonable doubt." *United States v. Correia*, 55 F.4th 12, 26 (1st Cir. 2022) (cleaned up). "In conducting this tamisage, we must honor the jury's evaluative choice among plausible, albeit competing, inferences," and "[w]e need not be convinced that the verdict is correct but, rather, need only be satisfied that the verdict is supported by the record." *Id.* (cleaned up).

Here, Giang concedes [Br. 17-18] her sufficiency claim is unpreserved and that she is not entitled to review under the already "difficult," *United States v. Buoi*, 84 F.4th 31, 37 (1st Cir. 2023), rational-trier-of-fact standard. Instead, she agrees she is saddled with the even more demanding "clear and gross injustice" test under which she must establish the evidence was so "plainly" defective that her conviction was "'shocking.'" *United States v. Falcón-Nieves*, 79 F.4th 116, 124-26 (1st Cir. 2023). But because the Court can easily affirm under either standard, it need not rely on her concession.

As the requisite mailing in execution of the scheme to defraud, the indictment charged that Giang caused Travelers to mail her a Premium Adjustment Notice for the policy period November 6, 2017 to November 6, 2018, and that this mailing occurred on or about December 6, 2018. [JA: 17].

The Premium Adjustment Notice in question was admitted as Exhibit 43. [JA: 687-690]. The notice reflected that the Travelers audit (which was based in part on Giang's submission of false IRS Form 941s) was now complete and that she would be receiving a refund of $802 as a result. [JA: 371-372].

A Senior Investigator at Travelers who had worked there since 2016 and who was well acquainted with its business [JA: 350-356] testified without objection that all such Premium Adjustment Notices are "sent by regular mail" from the Travelers "printing office which is in Norcross, Georgia" [JA: 356]. He further testified that the Exhibit 43 Premium Adjustment Notice would have been mailed from Travelers to Giang's business address in Quincy. [JA: 371]. In addition, he testified that Travelers had mailed Giang three previous Premium Adjustment Notices, in 2015, 2016, and 2017. [JA: 370].

Viewing this evidence in the light most favorable to the verdict, there were ample grounds for a rational jury to conclude not only that Giang "caused" Travelers to mail the Exhibit 43 notice but that it was entirely foreseeable to her Travelers would do so since she had previously caused it to mail three essentially identical

notices—notices that announced the premium discounts that were the object of her scheme. And at the very least, the evidence was not so lacking on these points that her conviction was "shocking." [Br. 24]. Mail fraud cases in the insurance fraud context, including decisions cited by Giang, confirm the point. *See United States v. Hebshie*, 549 F.3d 30, 36-37 (1st Cir. 2008); *United States v. Pimental*, 380 F.3d 575, 588 (1st Cir. 2004); *United States v. Morrow*, 39 F.3d 1228, 1237 (1st Cir. 1994); *United States v. Contenti*, 735 F.2d 628, 632 (1st Cir. 1984).

There is no plausible basis for distinguishing this precedent. In fact, Giang is in a worse position than most of these defendants because, although "it is simply the 'use of the mails' in the course of the scheme rather than the particular mailing at issue that must be reasonably foreseeable for the causation element of a mail fraud offense to be satisfied," *Pimental*, 380 F.3d at 589, here the evidence enabled a rational jury to find she could have anticipated the mailing of the Exhibit 43 notice having received three previous notices by mail reflecting premium discounts.

Contrary to Giang's suggestions [Br. 21], the fact that the Travelers investigator referred to "Travelers JMD" in discussing Exhibit 43 [JA: 371] does not mean he was stating this notice was mailed from the entity's Hartford, Connecticut office instead of from its Georgia facility, so there is no inconsistency here. And even if that *were* a correct interpretation of his testimony, that would not help Giang anyway because it makes no difference where the notice was mailed from.

Moreover, it is immaterial the notice may have also been "available electronically" [Br. 21], and that other document exchanges and communications with Travelers may have occurred online [Br. 20-22].

In three sentences [Br. 22], Giang seems to say—without actually developing the point—that the investigator's testimony was inadmissible for lack of an adequate foundation. There are four responses. First, Giang's perfunctory treatment of this issue amounts to waiver. *See United States v. Reardon*, 111 F.4th 142, 150 (1st Cir. 2024); *United States v. Caparotta*, 676 F.3d 213, 218 (1st Cir. 2012). Second, there was no objection to the testimony below—whether on this or any other ground—so review is at best for plain error, and Giang's failure to address the plain-error standard results in a second waiver. *See United States v. Rathbun*, 98 F.4th 40, 58 (1st Cir. 2024) (citing *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016)). Third, given that the investigator had worked at Travelers since 2016 and was familiar with its operations, it is far from "obvious" under the second plain-error prong that he lacked a sufficient knowledge base from which to testify that the company mails out Premium Adjustment Notices. And fourth, even if Giang could scale these hurdles, affirmance would still be required because sufficiency review considers *all* the trial evidence—even evidence determined on appeal to be inadmissible. *See United States v. Martínez-Hernández*, 118 F.4th 72, 80 (1st Cir. 2024); *United States v.*

*Santiago-González*, 825 F.3d 41, 46 (1st Cir. 2016); *United States v. Ramírez–Rivera*, 800 F.3d 1, 16 (1st Cir. 2015).

## II.    Admission of the structuring evidence was not an abuse of discretion

Giang argues [Br. 25-31] the district court erred in permitting the government to introduce evidence that banks are required to report cash withdrawals of more than $10,000 and that she was well aware of that threshold when she repeatedly withdrew amounts just under it to pay her employees under the table and thereby defeat her tax responsibilities. Review is for an abuse of discretion. *See United States v. Abbas*, 100 F.4th 267, 290 (1st Cir.), *cert. denied*, 145 S. Ct. 319 (2024). There was no such abuse here.

### A.    Background

Prior to trial, Giang moved to exclude evidence that she structured the cash withdrawals to avoid triggering the banks' duty to report the transactions, arguing this could not have been her intent since in some cases she withdrew over $10,000, which she said implicated Fed. R. Evid. 104(b); the evidence was inadmissible "other bad act" evidence under Fed. R. Evid. 404(b); and its relevance was outweighed by the risk of unfair prejudice under Fed. R. Evid. 403. [JA: 66-69]. The government opposed the motion. [JA: 91-95]. The district court denied the motion in a text order "given the government's agreement that it will not present evidence of or argue restructuring [sic] as a discrete violation of law" and since it saw "no

basis to limit evidence of defendant's actions with respect to her bank account withdrawals." [DA: 2]. Defense counsel made further objections to the evidence at a pretrial conference and at trial (some of which were sustained), including a hearsay objection not renewed on appeal. [JA: 140-145, 249-256, 452-453, 538].

## B.   The evidence was highly probative, intrinsic, and not unfairly prejudicial

As she did below, Giang argues [Br. 28-29] as an initial matter that there was insufficient proof she structured her cash withdrawals in order to stay below the $10,000 threshold that would trigger a bank report to the government, invoking Rule 104(b), which states in part: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). But Giang's criticisms here "go to the weight of the evidence, not to its admissibility." *United States v. Weadick*, 15 F.4th 1, 18-19 (1st Cir. 2021) (rejecting argument that admission of alleged "other bad acts" was in error because the "evidence showing [defendant's] involvement in the drug scams was weak"). Thus, her reliance on Rule 104(b) is misplaced. *See United States v. Cardena*, 842 F.3d 959, 984 (7th Cir. 2016).

Giang's argument also fails on its own terms. The pattern, frequency, and amounts of the cash withdrawals [*supra* 3-4]—including numerous $8,000-9,500 withdrawals and many instances of two or three such withdrawals on a single day or

adjacent days—were plainly indicative of structuring. If more were needed, the Rockland Trust teller testified she discussed the reporting threshold with Giang and that Giang later admitted she was using the money to pay her employees. [JA: 248-257, 820]. Not only were these details more than sufficient to establish by a preponderance the "conditional fact" Giang says was missing, *see United States v. Vázquez-Soto*, 939 F.3d 365, 374 (1st Cir. 2019), but they would have supported a prosecution for structuring under 31 U.S.C. § 5324(a)(3), *see United States v. Souza*, 749 F.3d 74, 79 (1st Cir. 2014) (multiple $9,000 withdrawals at different bank branches). The mere fact that Giang withdrew more than $10,000 in some cases toward the tail end of the scheme does not affect this conclusion.

This evidence, in turn, was highly probative as it strongly indicated Giang wished to avoid bank reports to the government of her large cash withdrawals that could expose her under-the-table payments to her employees and the tax fraud she was committing. The evidence was powerful proof that she had acted "willfully" as required for a conviction. [JA: 600-601, 604-605]. It also rebutted her defense that her conduct was the product of mistake or accident and that "as an immigrant and non-native English speaker, she did not understand the tax code or the insurance market sufficiently to commit the charged fraud." [Br. 36]. On top of this, the

evidence supplied the key context for Giang's admission to the teller that she was using the cash withdrawals to pay her employees.[3]

Contrary to Giang's terse suggestion [Br. 29 n.8], Fed. R. Evid. 404(b) does not apply here because her structuring conduct was intrinsic to the tax fraud scheme. Indeed, it was inextricably intertwined with that scheme as the structured cash withdrawals were the very same funds Giang was using to pay her employees and thereby dodge her tax debts. It would be hard to imagine a closer—if not dialectical—relationship between the two things. *See, e.g.*, *Abbas*, 100 F.4th at 290-91 (evidence of uncharged fraud intrinsic even though it pertained to other victims); *Souza*, 749 F.3d at 84 (holding in reverse situation from the present case that uncharged fraudulent conduct was intrinsic to structuring offense); *United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005) (defendant's false tax return was "intertwined" with charged fraud crime and thus intrinsic to it "because the tax return reports the income that he received from the fraudulent scheme.").

---

[3] Giang twice states that she "repeatedly withdrew more than $10,000" [Br. 29], apparently viewing this as the linchpin of her position. She omits to mention, however, that this only occurred starting in late October 2018 [JA: 847], shortly after Rockland Trust instructed the teller to ask Giang about the purpose of her large cash withdrawals [JA: 253-257, 819-821]. Giang did not withdraw more than $10,000 in a single transaction even once during the three-year period between October 6, 2015 and October 22, 2018. [JA: 834-847]. It is hardly surprising her structuring conduct abruptly ceased after she realized she was under scrutiny. Thus, if anything, the circumstance she is so keen to emphasize only underscores the relevance of the evidence and the soundness of the guilty verdicts.

Even if the evidence could be considered extrinsic, that would not assist Giang as Rule 404(b) is "a rule of inclusion," *United States v. Rodríguez-Soler*, 773 F.3d 289, 297 (1st Cir. 2014), and it allows evidence pertinent to proving "intent," "plan," "knowledge," "absence of mistake," and "lack of accident." Fed. R. Evid. 404(b)(2). As just noted, the structuring evidence tended to prove all five things, making it admissible even if Rule 404(b) applies as a threshold matter.

Nor was the evidence "unfairly prejudicial," *Abbas*, 100 F.4th at 291, under Fed. R. Evid. 403. Consistent with the government's pretrial commitment [JA: 92] and the district court's corresponding order [DA: 2], the government steered clear of any suggestion that the structuring conduct constituted a separate criminal offense, a regulatory violation, or even generalized "misconduct." [Br. 30]. The jury simply learned of the banks' reporting duty and received evidence from which it could infer Giang was aware of that duty. The damning data concerning the pattern, frequency, and amounts of Giang's cash withdrawals—from which the jury could infer she sought to *prevent* such reports—came in without objection because it was central to the case, so it does not factor into the prejudice analysis. That viewed collectively the evidence was potent proof of willfulness does not make it *unfairly* prejudicial. "[T]his evidence was designed to prejudice the jury against [Giang] in the sense that exposure to it would render a conviction more likely," but Rule 403 "protects a defendant against *unfair* prejudice, not against *all* prejudice." *United States v.*

15

*Rivera-Gomez*, 67 F.3d 993, 997 (1st Cir. 1995) (emphasis in original); *accord United States v. Doe*, 741 F.3d 217, 229 (1st Cir. 2013).

Although the Court need not look further to conclude there was no abuse of discretion, decisions of other circuits bolster the point. *See, e.g.*, *United States v. Mills*, 2022 WL 2901005, at *2 (3d Cir. July 22, 2022) (affirming tax convictions based in part on "the evidence of Mr. Mills' combined use of cash and checks to avoid triggering the $10,000 reporting requirement . . . [which] could also lead a reasonable juror to conclude he acted willfully."); *United States v. Ristovski*, 211 F.3d 1271 (6th Cir. 2000), 2000 WL 491513, at *6, *as amended* (May 8, 2000) (evidence of structuring was "indicative of willfulness" in tax fraud case); *United States v. Jae Shik Cha*, 97 F.3d 1462, 1996 WL 525374, at *1 (9th Cir. 1996) (evidence of structuring was "highly relevant" to show intent in money laundering case, it was intrinsic, and it was not unfairly prejudicial).[4]

---

[4] Giang has never made—whether below or on appeal—Rule 404(b) claims keyed to the fact that some of the fraud and structuring evidence fell outside the narrower timeframes applicable to the discrete tax counts and the mail fraud count (April 2017 through December 2018) [JA: 16-17] but within the broader period encompassed by the indictment (2015-2019) [JA: 12-15], perhaps recognizing that since the indictment "expressly" covered all these years "evidence relating to this [broader] scheme is not other crimes evidence and it does not fall within the scope of Rule 404(b)." *United States v. DeSimone*, 699 F.3d 113, 124 (1st Cir. 2012).

## III. The district court was not required to give an implicit bias instruction

### A. Background

Giang submitted 28 pages of proposed jury instructions, including a six-page implicit bias charge devised by the Massachusetts Supreme Judicial Court (SJC). [JA: 38-65]. The charge contained footnotes citing implicit bias studies [JA: 45-50], but Giang offered no case-specific reasons why it was critical here.

At a status conference held four days before trial, the district court indicated it would inquire of prospective jurors whether they had any bias or prejudice that could affect their ability to be impartial, noting that it was wary of raising the "delicate issue" of Giang's "immigration" and "ethnicity" since "[s]ometimes it does more harm than good" but that it would do so if defense counsel wished. [JA: 129, 131]. When counsel replied in the affirmative, the court proposed telling prospective jurors that Giang was "an American citizen of Vietnamese origin" and asking them whether there was "anything about the fact [of] . . . her ethnicity or immigration to the U.S. [that] would cause anyone to hesitate about treating her fairly than they would anyone else." [JA: 132]. Counsel agreed with that language. [JA: 132]. The court declined, however, to give an initial instruction to the seated jurors on implicit bias, stating that it was familiar with the SJC's implicit bias instruction and that it was a "poor one" in part because it injected the issue of bias into cases where it might not otherwise exist. [JA: 140-141]. The court also expressed doubt that "there's any

generalized bias against Vietnamese." [JA: 140-141]. In response, counsel stated she "might object" because "I do think it's appropriate," but did not explain why and shifted to a different topic. [JA: 141].

During voir dire of prospective jurors on the first trial day, the district court asked them whether they were "aware of any bias, prejudice, or other reason that would make it difficult for [them] to serve as an impartial judge of the facts of the case," and there was no response. [JA: 160-161]. The court then probed further:

> As you may have observed, Ms. Giang, the defendant, is a naturalized American citizen of Vietnamese origin. She speaks English, but she is not fluent in the legal terms in the course of a criminal case, so she will require, as you can tell, the assistance of an interpreter during the trial.
>
> Is there anything about these facts that might cause any prospective juror to doubt your ability to treat Ms. Giang with the same fair consideration you would give to any person accused of a crime?

[JA: 166-167]. Again, there was no response. [JA: 167]. Defense counsel did not ask for any further inquiry on this point, and ultimately the jury was selected and sworn. [JA: 167-176]. After the court gave preliminary instructions to the seated jurors, defense counsel briefly objected to the court's decision not to give the SJC's implicit bias instruction. [JA: 190].

At the end of the second trial day, the district court observed that it would not include the proposed implicit bias instruction in its final instructions. [JA: 373]. Defense counsel did not further elaborate on her request. [JA: 373].

18

The next day, the district court reiterated its view that such an instruction was not warranted, expressing skepticism about the existence of anti-Asian bias and suggesting that if anything the "stereotype[s]" it was "familiar with" were positive ones. [JA: 382-383].[5] It did, however, instruct the jury as follows: "You must do your duty as jurors regardless of any personal like or dislikes, opinions, prejudice, or appeals to sympathy. That means you must decide the case based solely on the evidence that is before you." [JA: 590-591]. After the charge, defense counsel objected to the court's omission of her proposed SJC implicit bias instruction, and the court reiterated that such an instruction was not required. [JA: 608-609].

## B.    There was no error, let alone plain error or an abuse of discretion

In the district court, Giang's counsel said the six-page implicit bias instruction was "appropriate" [JA: 141], and she objected to its absence from the initial and final instructions [JA: 190, 608], but she never explained why it was important to this particular case. Counsel's separate remarks during voir dire suggested a concern that jurors might be biased against Giang for being Vietnamese[6] and/or an immigrant, and the court ultimately addressed that voir dire issue to counsel's satisfaction. [JA: 131-132, 160-161, 166-167]. The case law likewise confirms the court fulfilled its

---

[5] For reasons discussed below, the Court need not embrace these views to affirm.

[6] Giang testified she was born in Vietnam to Chinese parents. [JA: 496-497].

19

duty here, and Giang does not claim otherwise. *See United States v. Casanova*, 886 F.3d 55, 59-61 (1st Cir. 2018); *United States v. Parker*, 872 F.3d 1, 7-8 (1st Cir. 2017); *United States v. Gelin*, 712 F.3d 612, 621-22 (1st Cir. 2013).

On appeal, Giang now argues that the district court's denial of her request to give the SJC's implicit bias instruction was tantamount to a refusal to instruct on her "theory of the defense" and that this "impaired [her] ability to present [her] defense." [Br. 33 (cleaned up); *see also* Br. 38 ("The proposed implicit-bias instructions were integral to the defense and the court's failure to give them seriously impaired Ms. Giang's ability to present a defense.")]. Because Giang never made this argument below, review is for plain error. *See United States v. Facteau*, 89 F.4th 1, 27 (1st Cir. 2023) ("Because 'a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court,' *United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992), we will apply plain error review to assess Facteau's unpreserved argument."); *United States v. Mercado*, 412 F.3d 243, 247 (1st Cir. 2005) ("'It is well established that an objection on one ground does not preserve appellate review of a different ground.'"). And because she makes no effort to satisfy that standard, her claim is waived. *Rathbun*, 98 F.4th at 58.

Regardless, there was no "obvious" error because the district court's refusal to give the SJC's implicit bias instruction did not prevent or impair Giang's "mens rea" defense that "as an immigrant and non-native English speaker, she did not

20

understand the tax code or the insurance market sufficiently to commit the charged fraud." [Br. 36]. She was fully able to and did testify along these lines [JA: 496-520], and defense counsel pursued these themes in opening [JA: 198-202] and closing [JA: 567-583] without any evident impediment. Giang also fails to establish a reasonable probability that her intent defense would have succeeded had the proposed implicit bias instruction been given.

Giang also argues for the first time that two features of the case apart from her race, ethnicity, national origin, or immigrant status required the district court to give the SJC's implicit bias instruction: (1) "The government called 3 witnesses with a common Vietnamese last name, leading the prosecutor to note that the witnesses are not related."; and (2) "One witness expressed racial prejudice, saying that his wife could communicate with Ms. Giang because '[s]he speaks Asian.'" [Br. 36-37]. Putting aside waiver, neither circumstance supports a claim of obvious error or prong-three prejudice. The idea that the remarks of the prosecutor or the witness conveyed racial bias is groundless, and nothing in these snippets compelled an implicit bias instruction.

To the extent Giang contends more broadly that the SJC's implicit bias instruction or a variant on it must be given as a routine matter or whenever a defendant has a race, ethnicity, national origin, or immigrant status that differs from one or more jurors (Giang never made a record concerning how individual jurors

may have varied from her in these respects), that is plainly wrong. *See United States v. Díaz-Arias*, 717 F.3d 1, 23-24 (1st Cir. 2013). Giang cites no support for such a sweeping rule, and the case law undermines any notion that the court abused its discretion in declining to give such a charge. *See, e.g., United States v. Maxwell*, 89 F.4th 671, 679-80 (8th Cir. 2023); *United States v. Mitchell*, 2023 WL 3620913, at *5 (11th Cir. May 24, 2023); *United States v. Nishida*, 2021 WL 3140331, at *2 (9th Cir. July 26, 2021); *United States v. Sawyers*, 740 F. App'x 585, 585 (9th Cir. 2018); *United States v. Graham*, 680 F. App'x 489, 492-93 (8th Cir. 2017).

## IV. The remaining jury instruction claims are unavailing

### A. Employee versus subcontractor

#### 1. Background

With respect to the tax counts, the district court instructed the jury that the government was required to prove three elements beyond a reasonable doubt:

> First, that Ms. Giang had a duty to collect, account truthfully for, or pay over an employment tax; second, that Ms. Giang knew she had a duty to collect, account truthfully for, or pay over an employment tax; and, third, that Ms. Giang willfully failed to collect, account truthfully for, or pay over the employment tax.

[JA: 600]. After defining this "duty" and cautioning that the government had to establish that Giang acted "willfully" in the sense that she acted "voluntarily" and "with the specific intent to do something that the law forbids" [JA: 600-601], the court then explained the meaning of "employment tax":

22

An employment tax is a tax imposed by federal law on the wages of individual employees, which includes an income tax, a social security tax, and a Medicare tax. Federal law requires the employer to file with the Internal Revenue Service or IRS, a Form 941, the employer's federal quarterly tax return, and to pay over to the IRS the employment taxes that the employer has collected on a quarterly basis, that is, four times a year. The employer is required to report on the IRS Form 1941 [sic] the wages that the employer paid its employees that quarter and the employment taxes paid on those wages. Wages include all compensation the employer paid the employee for work performed.

[JA: 601].

Several transcript pages later, the court reminded the jurors that both the tax and fraud counts demanded proof that Giang acted "willfully" with the "specific intent to do something that the law forbids" and that "actions taken in good faith by a defendant amount to a complete defense." [JA: 604-605]. The court then emphasized that (1) "[I]f you find that Ms. Giang believed in good faith that she was acting properly, even if she was mistaken in that belief, and even if others were injured by her conduct, it would be no crime."; (2) "Good faith . . . negates criminal intent"; and (3) "Ms. Giang has no burden to establish good faith" and that instead "[t]he burden is on the Government to prove the lack of good faith beyond a reasonable doubt." [JA: 605].

In the wake of the charge, defense counsel objected to the portion of the "employment tax" instruction in which "you basically tell the jurors that payroll taxes have to be withheld," stating only that "I think we heard some testimony that

23

if people are subcontractors that payroll taxes don't have to be [withheld]." [JA: 608-609]. When the court responded that "It's not a factual issue in this case" [JA: 609], counsel did not disagree and instead moved on to a different issue [JA: 609].

### 2. There was no plain or other error

Giang now argues that although the "employment tax" instruction was an accurate statement of the law, "[b]y describing an employer's duties with respect to employees *without acknowledging that those duties do not exist with respect to subcontractors*, the court conveyed that Ms. Giang had a duty and willfully disregarded it" and thus the "instruction relieved the government of its burden to prove every element beyond a reasonable doubt." [Br. 47 (emphasis added)]. In other words, Giang appears to contend the court was required to give an additional explanation concerning the difference between subcontractors and employees and to clarify that in the case of the former there are no "wages" or "payroll" and hence taxes are not withheld.

The comprehensive proposed instructions submitted by the defense contained no request for such an instruction and indeed made no reference at all to subcontractors. [JA: 38-65]. Further, the cryptic post-charge objection by defense counsel suggested the court should simply omit the language to the effect that "payroll taxes have to be withheld" to account for the theoretical possibility that "if people are subcontractors . . . . payroll taxes don't have to be [withheld]." [JA: 608-

609]. There was no discernable demand for an instruction explaining the employee/subcontractor distinction. Hence, review is for plain error. *See Facteau*, 89 F.4th at 26-27.

It is easy to see why there was no such request. As the district court noted [JA: 609], the distinction between employees and subcontractors was not an issue in this case. The defense opening statement was entirely silent on the topic. [JA: 198-202]. Moreover, far from suggesting she thought some or all of her employees were subcontractors, Giang confirmed she had instructed her daughter to tell Travelers that she had no subcontractors or "contracts" and went so far as to assert that her accountant had unilaterally employed the "subcontractor" designation on her corporate tax return, which she did not "know how to read," suggesting he had gone rogue and that she had switched to a different accountant as a result. [JA: 516, 540-541; *see also* JA: 367-368, 389, 408-409, 685 (Giang affirms to Travelers that she uses only employees and not contractors or subcontractors)].

Nor did the employment tax instruction "convey[] that Ms. Giang had . . . willfully disregarded" [Br. 47] her duty to pay taxes. It simply set forth the nature of that duty in the abstract, and the district court elsewhere made clear that it was the government's burden to prove that (a) Giang herself had such a duty in light of the circumstances of her business (a point the defense did not seriously dispute), and (b) she knew of this duty and willfully disregarded it with the specific intent to do

25

something the law forbids. Even if the Court accepted Giang's invitation to view the criticized instruction in "splendid isolation," *United States v. Aboshady*, 951 F.3d 1, 11 (1st Cir. 2020), her strained interpretation of it does not hold water. And when context is considered, as it must be, *id.*, her claim borders on the frivolous.

Under these circumstances, Giang is wrong in contending [Br. 43] that the district court's instructions failed to "adequately explain[] the law" or "tended to confuse or mislead the jury on the controlling issues," *United States v. Wright*, 937 F.3d 8, 22 (1st Cir. 2019), so she cannot establish the court abused its discretion [Br. 43] even if her appellate issue were preserved. And at the very least, it is far from plain or obvious that the opposite is true.

Giang also cannot demonstrate a reasonable probability that any error altered the verdict. The trial evidence was clear that taxes are not withheld for subcontractors. [JA: 429, 435-436]. If the defense had wished to argue Giang thought some or all of her employees were subcontractors and that she failed to withhold and pay taxes on that understanding, it was free to do so. But the defense did not do so for the obvious reason that Giang's own testimony and the surrounding evidence fatally undermined any such idea. Instead, defense counsel took the position in closing that Giang "clearly doesn't understand what subcontractor means" and that the corporate tax return using this term was purely a mistake by her

accountant. [JA: 573-574]. This just ratifies the district court's view that the distinction was not an issue in the case.

## B.     Good faith versus intent to deceive

### 1.     Background

As stated, the district court twice instructed the jury that the government had to prove beyond a reasonable doubt that Giang acted "willfully" in the sense that she acted "voluntarily" and "with the specific intent to do something that the law forbids." [JA: 600-601, 604]. The court then explained that: (1) "[A]ctions taken in good faith by a defendant amount to a complete defense." [JA: 604-605]; (2) "[I]f you find that Ms. Giang believed in good faith that she was acting properly, even if she was mistaken in that belief, and even if others were injured by her conduct, it would be no crime."; (3) "Good faith . . . negates criminal intent"; and (4) "Ms. Giang has no burden to establish good faith" and that instead "[t]he burden is on the Government to prove the lack of good faith beyond a reasonable doubt." [JA: 605].

At the government's request [JA: 37 & n.11], the district court added a caveat about good faith: "Good faith which negates criminal intent, however, should not be confused with good motive, which does not. *Nor can a defendant act in good faith, even though she holds a certain opinion or belief, if she also acted with the purpose of deceiving others.*" [JA: 605 (emphasis added)]. After the charge, defense counsel objected that the underscored sentence "undercuts the specific intent requirement for

27

tax counts as found in the *Cheek* case," referring to *Cheek v. United States*, 498 U.S. 192 (1991). [JA: 609]. The district court responded: "That was a correct statement of First Circuit law and that's why I included it." [JA: 609].

## 2. The *Goodchild* decision

As Giang notes [Br. 49], the decision cited by the government [JA: 37 n.11] and apparently relied upon by the district court involved the charge of fraudulent use of an access device under 18 U.S.C. § 1029(a)(3), and it concerned a challenge to the sufficiency of the evidence and not to the jury instructions. *United States v. Goodchild*, 25 F.3d 55, 59 (1st Cir. 1994). Before addressing the sufficiency claim, the Court quoted a several-paragraph instruction the district court had given on intent to defraud and good faith, which included language that "'[a] defendant does not act in good faith if, even though she honestly holds a certain opinion or belief, that defendant also acted with the purpose of deceiving others.'" *Id*. at 59. Without singling out this particular passage, the Court then stated without elaboration: "It is clear that the jury was properly and evenhandedly instructed on intent to defraud." *Id*. at 59-60. The government thus agrees with Giang that *Goodchild* did not address the issue of whether the quoted language represents a correct statement of the law, whether in the fraudulent access device context or any other context.

As now explained, the good faith caveat is fully consistent with settled fraud standards, as Giang has implicitly conceded. [JA: 609; Br. 48-51]. And contrary to

28

her preserved position [JA: 609; Br. 48-51], the caveat's wording did not nullify the *Cheek*-based willfulness mens rea applicable to the tax counts.

### 3. The mail fraud count

Willfulness is not an element of mail fraud. *See* 18 U.S.C. § 1341; *Carter v. United States*, 530 U.S. 255, 261 (2000). The government need only show: "'(1) the defendant's knowing and willing participation in a scheme or artifice to defraud with the specific intent to defraud, and (2) the use of the mails . . . in furtherance of the scheme.'" *Falcón-Nieves*, 79 F.4th at 126.

Although the Court has used the word "willful" and variants on it in mail and wire fraud cases, *see, e.g.*, *Abbas*, 100 F.4th at 280, it has not done so in the *Cheek* sense of the "'willful' mens rea in certain portions of the tax code [that] requires specific intent to violate a known legal duty." *United States v. Karani*, 984 F.3d 163, 176 (1st Cir. 2021). To the contrary, in holding that a "good faith" instruction is not required *at all* so long as the district court sets forth the quoted mens rea standard, it has specifically rejected the argument that the heightened *Cheek*-based formulation of willfulness applies to mail and wire fraud charges:

> *Cheek* construed the word 'willfully' in the tax evasion statute, 26 U.S.C. §§ 7201, 7203, and concluded that a good faith misunderstanding of the tax law need not be objectively reasonable to serve as a complete defense. We do not find *Cheek* controlling for two reasons. First, the willfullness [sic] requirement in tax evasion serves a function unique in criminal law: it makes ignorance of the law a defense. Thus it is not synonymous with the intent to defraud

29

requirement in the mail and wire fraud statutes. Second, the issue in *Cheek* was whether or not the good faith defense must be objectively reasonable. The issue here is not the components of a good faith defense, but whether the existence of such a defense had been adequately conveyed to the jury. *Cheek* did not touch this point.

*United States v. Dockray*, 943 F.2d 152, 155-156 (1st Cir. 1991); *accord United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992).[7]

As just noted, this Court has held that "where the court properly instructs the jury on the element of intent to defraud . . . a separate instruction on good faith is not required." *Dockray*, 943 F.2d at 155. This is because intent to defraud is 'essentially the opposite of good faith.'" *United States v. Berroa*, 856 F.3d 141, 161 (1st Cir. 2017) (quoting *Dockray*). Other circuits agree. *See, e.g.*, *United States v. Chanu*, 40 F.4th 528, 543 (7th Cir. 2022) ("'[I]t is impossible to intend to deceive while simultaneously acting in good faith.'"); *United States v. Sirang*, 70 F.3d 588, 594 (11th Cir. 1995) ("'[a] finding of specific intent to deceive categorically excludes a finding of good faith.'").

Given that "good faith" and intent to defraud/deceive are flip sides of the same coin, for purposes of the mail fraud count the district court did not err when, after instructing that good faith was a complete defense and that the government bore the

---

[7] Consistent with *Dockray*, the Supreme Court and this Court have since turned back other efforts to inject the *Cheek* willfulness standard into non-tax-related statutes. *See Bryan v. United States*, 524 U.S. 184, 193-96 (1998); *Karani*, 984 F.3d at 176-77; *United States v. Meade*, 175 F.3d 215, 226 n.5 (1st Cir. 1999).

burden of disproving it, it simply called attention to the two-sided nature of that coin: "Nor can a defendant act in good faith, even though she holds a certain opinion or belief, if she also acted with the purpose of deceiving others." [JA: 605]. Moreover, in context, the jury would have understood "deceiving others" to mean the targeted victims of the offenses and not random third parties. And this explains why Giang has not argued that the good faith caveat was erroneous in the case of the mail fraud count.[8]

### 4. The tax counts

With respect to the tax counts, Giang maintains the good faith caveat fatally undercut the heightened mens rea "specific intent to violate a known legal duty." *Karani*, 984 F.3d at 176. Read as a whole, the instructions show otherwise.

In its tax charge, the district court stated clearly and without any qualification that the government had to prove three elements beyond a reasonable doubt:

> First, that Ms. Giang had a duty to collect, account truthfully for, or pay over an employment tax; second, that Ms. Giang knew she had a duty to collect, account truthfully for, or pay over an employment tax; and, third, that Ms. Giang willfully failed to collect, account truthfully for, or pay over the employment tax.

---

[8] The analysis is not affected by the fact that the district court incorrectly elevated the government's burden by instructing that it was required to satisfy the heightened *Cheek* standard for willfulness in order to prove the mail fraud count. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016); *United States v. Chin*, 15 F.4th 536, 545 (1st Cir. 2021).

[JA: 600]. It then stated in equally clear and absolute terms that the government had to establish that Giang acted "willfully" in the sense that she acted "voluntarily" and "with the specific intent to do something that the law forbids." [JA: 600-601]. Although the court said that good faith and intent to deceive are effectively opposite mental states, this did not mean the jury could convict Giang of the tax crimes merely if it found she acted in bad faith or with intent to deceive. The jury was still required to find that she acted with the specific intent to do something the law forbids. While good faith would *defeat* a finding of willfulness, the absence of good faith (*i.e.*, bad faith or intent to deceive) would not suffice to show Giang acted with the specific intent to violate the tax laws. Under the instructions, good faith and intent to deceive were opposite sides of the same coin, but there was no such inverse relationship between *willfulness* and good faith. In the case of the tax counts, good faith merely set the floor, not the ceiling. Context thus defeats Giang's claim.

For three main reasons, however, "any potential error was harmless beyond a reasonable doubt." *United States v. McLellan*, 959 F.3d 442, 466 (1st Cir. 2020). Thus, the Court need not definitively resolve the merits.

First, the district court's tax instructions focused overwhelmingly on a correct statement of the core tax elements and the *Cheek* willfulness standard. To the extent the good faith wording did not map perfectly onto the tax counts, it hardly erased the court's lucid description of the bedrock criteria for a tax conviction and the *Cheek*

willfulness requirement—a requirement the Court stressed twice. *Cf. United States v. Carter*, 19 F.4th 520, 528 (1st Cir. 2021) (holding "misstatement was not prejudicial error because the context of the instructions as a whole made abundantly clear the meaning of the instruction."); *United States v. Pennue*, 770 F.3d 985, 990 (1st Cir. 2014) ("Given the tenor of the charge as a whole, it would take the elevation of hope over reason to believe that the district court's lapsus linguae diluted the government's burden of proof.").

Second, the parties' closing arguments trained almost exclusively on whether Giang acted willfully by *Cheek* standards. [JA: 561-581]. The jury would have seen this as the pivotal issue it needed to decide.

Third, and most importantly, the evidence that Giang did indeed act willfully in failing to report millions of dollars in cash wages was not just overwhelming but irrefutable. As an initial matter, the sheer volume of the cash payments left little room for any defense. Giang's unsupported assertion that some of her employees lacked bank accounts made no sense as an excuse because she was paying them with a *mix* of checks and cash. [JA: 316-330, 792-818, 855-902]. Beyond this, Giang concealed the cash wages—and associated timesheets and invoices that would have revealed them—from her own daughter even though her daughter was responsible for the agency's payroll, and she reported much higher labor costs on her corporate tax returns when it suited her tax interests to do so. [*Supra* 3]. Finally, any

conceivable doubt about Giang's mental state was erased by her repeated and blatant acts of structuring over a three-year period, which richly confirmed she knew she was violating the tax laws. [*Supra* 3-4]. Giang's implausible explanations of that conduct (testifying she could not recall doing it and did not "think" she would do it even though she did it scores of times, while then admitting she did it but only because it was "convenient") [*supra* 4], only served to solidify this obvious inference. In sum, an acquittal on this evidence would have been irrational, which may explain why the jury returned its guilty verdicts in an hour.

There is no likelihood in these circumstances that the challenged instructional language spelled the difference between conviction and acquittal, and thus the Court may leave for another day the question whether the targeted charge is consistent with *Cheek*.

## CONCLUSION

For these reasons, the government respectfully requests that the Court affirm

the judgment.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  /s/ *Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney

# CERTIFICATE OF COMPLIANCE WITH
## Rule 32(a)

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,673 words (an opening or answering brief may not exceed 13,000 words, a reply brief may not exceed 6,500 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

*/s/ Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney

Dated: April 28, 2025

## CERTIFICATE OF SERVICE

I, Donald C. Lockhart, Assistant U.S. Attorney, hereby certify that on April 28, 2025, I electronically served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Christine DeMaso
Assistant Federal Public Defender
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210

/s/ *Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney

No. 24-1829

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT
_____

UNITED STATES OF AMERICA,
APPELLEE

v.

LILIAN GIANG,
DEFENDANT-APPELLANT
_____

## Addendum Table of Contents

1.   Exhibit and witness list [ECF 77]...................................................GA: 01

2.   Exhibit 119 ....................................................................................GA: 07

3.   Exhibit 120 ....................................................................................GA: 08

4.   Exhibit 121 ....................................................................................GA: 09

5.   Exhibit 123 ....................................................................................GA: 10

6.   Exhibit 124 ....................................................................................GA: 11

7.   Exhibit 125 ....................................................................................GA: 12

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ MASSACHUSETTS

United States of America

V.

Lilian Giang

**EXHIBIT AND WITNESS LIST**

Case Number:  23-cr-10062-RGS

| PRESIDING JUDGE Honorable Richard G. Stearns | PLAINTIFF'S ATTORNEY Kearney, Markham | DEFENDANT'S ATTORNEY Peachy, Hawthorne |
|---|---|---|
| TRIAL DATE (S) 4/8/2024 - 4/10/2024 | COURT REPORTER Jessica Leonard | COURTROOM DEPUTY Timothy R. Maynard |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 2 | | 4/8/2024 | | Yes | 2015 Form 1040 U.S. Individual Income Tax Return for 2015_Redacted |
| 3 | | 4/8/2024 | | Yes | 2015 Form 1120 U.S. Corporation Income Tax Return for 2015_Redacted |
| 4 | | 4/8/2024 | | Yes | 2015-03-04  Corporate Registration for Able Temp Agency Inc |
| 5 | | 4/8/2024 | | Yes | 2015-03-24  Email_Universal Wilde |
| 6 | | 4/8/2024 | | Yes | 2016 Form 1040 U.S. Individual Income Tax Return for 2016_Redacted |
| 7 | | 4/8/2024 | | Yes | 2016 Form 1120 U.S. Corporation Income Tax Return for 2016_Redacted |
| 8 | | 4/8/2024 | | Yes | 2016-02-01 ABLE TEMP AGENCY Form 941 |
| 9 | | 4/8/2024 | | Yes | 2016-02-24  Corporate Registration for Able Temp Agency Inc |
| 10 | | 4/8/2024 | | Yes | 2016-09-14  Email_Universal Wilde |
| 11 | | 4/8/2024 | | Yes | 2016-10-18  Email_Universal Wilde |
| 12 | | 4/8/2024 | | Yes | 2016-12-19  Email_ADI Print Solutions Inc |
| 13 | | 4/8/2024 | | Yes | 2016-12-23  Travelers_Email |
| 14 | | 4/8/2024 | | Yes | 2016-12-26  Travelers_Email |
| 15 | | 4/8/2024 | | Yes | 2016Q1 Form 941 Employer's Quarterly Federal Tax Return for 201603 |
| 16 | | 4/8/2024 | | Yes | 2016Q2 Form 941 Employer's Quarterly Federal Tax Return for 201606 |
| 17 | | 4/8/2024 | | Yes | 2016Q3 Form 941 Employer's Quarterly Federal Tax Return for 201609 |
| 18 | | 4/8/2024 | | Yes | 2016Q4 Form 941 Employer's Quarterly Federal Tax Return for 201612 |
| 19 | | 4/8/2024 | | Yes | 2017 Form 1040 U.S. Individual Income Tax Return for 2017_Redacted |
| 20 | | 4/8/2024 | | Yes | 2017 Form 1120 U.S. Corporation Income Tax Return for 2017 |
| 21 | | 4/8/2024 | | Yes | 2017 W2 Bui, Linh L |
| 22 | | 4/8/2024 | | Yes | 2017 W2 Nguyen, Dung T |
| 23 | | 4/8/2024 | | Yes | 2017 W2 Nguyen, Nam N |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

**GA: 1**

✎AO 187A (Rev. 7/87)    **EXHIBIT AND WITNESS LIST – CONTINUATION**

| United States of America | | | VS. | | Lilian Giang | CASE NO. 23-cr-10062-RGS |
|---|---|---|---|---|---|---|

| PL.F. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES | |
|---|---|---|---|---|---|---|
| 24 | | 4/8/2024 | | Yes | 2017-02-26  Corporate Registration for Able Temp Agency Inc | |
| 25 | | 4/8/2024 | | Yes | 2017-05-29  Email_Universal Wilde | |
| 26 | | 4/8/2024 | | Yes | 2017-06-02  Email_Universal Wilde | |
| 27 | | 4/8/2024 | | Yes | 2017-06-05  Email_Universal Wilde | |
| 28 | | 4/8/2024 | | Yes | 2017-07-04  Email_Universal Wilde | |
| 29 | | 4/8/2024 | | Yes | 2017-07-10  Email_ADI Print Solutions Inc | |
| 30 | | 4/8/2024 | | Yes | 2017-07-18  Email_Universal Wilde | |
| 31 | | 4/8/2024 | | Yes | 2017-09-25  Staffing Agency Contract - Melville Candy_Able Temp Agency Inc | |
| 32 | | 4/8/2024 | | Yes | 2017-10-30  IRS Form W-9 | |
| 33 | | 4/8/2024 | | Yes | 2017-11-06  Travelers_Insurance Coverage | |
| 34 | | 4/8/2024 | | Yes | 2017Q1 Form 941 Employer's Quarterly Federal Tax Return for 201703 | |
| 35 | | 4/8/2024 | | Yes | 2017Q2 Form 941 Employer's Quarterly Federal Tax Return for 201706 | |
| 36 | | 4/8/2024 | | Yes | 2017Q3 Form 941 Employer's Quarterly Federal Tax Return for 201709 | |
| 37 | | 4/8/2024 | | Yes | 2017Q4 Form 941 Employer's Quarterly Federal Tax Return for 201712 | |
| 38 | | 4/8/2024 | | Yes | 2018-02-18  Corporate Registration for Able Temp Agency Inc | |
| 39 | | 4/8/2024 | | Yes | 2018-03-19  Email_ADI Print Solutions Inc | |
| 40 | | 4/8/2024 | | Yes | 2018-06-28  Email_Universal Wilde | |
| 41 | | 4/8/2024 | | Yes | 2018-12-05  Audit Submission | |
| 42 | | 4/8/2024 | | Yes | 2018-12-05  Travelers_Electronic Policyholder Report | |
| 43 | | 4/8/2024 | | Yes | 2018-12-06  Travelers_Premium Adjustment Notice | |
| 44 | | 4/8/2024 | | Yes | 2018-12-11  Travelers_Audit Letter | |
| 45 | | 4/8/2024 | | Yes | 2018-12-06 Travelers Analyst Worksheet | |
| 46 | | 4/8/2024 | | Yes | 2018Q1 Form 941 Employer's Quarterly Federal Tax Return for 201803 | |
| 47 | | 4/8/2024 | | Yes | 2018Q2 Form 941 Employer's Quarterly Federal Tax Return for 201806 | |
| 48 | | 4/8/2024 | | Yes | 2018Q3 Form 941 Employer's Quarterly Federal Tax Return for 201809 | |
| 49 | | 4/8/2024 | | Yes | 2018Q4 Form 941 Employer's Quarterly Federal Tax Return for 201812 | |
| 50 | | 4/8/2024 | | Yes | 2018 Form 1040 U.S. Individual Income Tax Return for 2018 | |

**GA: 2**

✎AO 187A (Rev. 7/87)   **EXHIBIT AND WITNESS LIST – CONTINUATION**

| United States of America | | | | vs. | Lilian Giang | CASE NO. 23-cr-10062-RGS |
|---|---|---|---|---|---|---|

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES | |
|---|---|---|---|---|---|---|
| 51 | | 4/8/2024 | | Yes | 2018 Form 1120 U.S. Corporation Income Tax Return for 2018 | |
| 54 | | 4/8/2024 | | Yes | 2019-04-06  Corporate Registration for Able Temp Agency Inc | |
| 55 | | 4/8/2024 | | Yes | 2019Q1 Form 941 Employer's Quarterly Federal Tax Return for 201903 | |
| 56 | | 4/8/2024 | | Yes | 2019Q2 Form 941 Employer's Quarterly Federal Tax Return for 201906 | |
| 57 | | 4/8/2024 | | Yes | 2019Q3 Form 941 Employer's Quarterly Federal Tax Return for 201909 | |
| 58 | | 4/8/2024 | | Yes | 2019Q4 Form 941 Employer's Quarterly Federal Tax Return for 201912 | |
| 59 | | 4/8/2024 | | Yes | 2020-07-17  Travelers_Email | |
| 60 | | 4/8/2024 | | Yes | 2020-08-05  Travelers_Revised Premium Adjustment Notice | |
| 61 | | 4/8/2024 | | Yes | ADI Print Invoices and Timesheets 2015 | |
| 62 | | 4/8/2024 | | Yes | ADI Print Invoices and Timesheets 2016 | |
| 63 | | 4/8/2024 | | Yes | ADI Print Invoices and Timesheets 2017 | |
| 64 | | 4/8/2024 | | Yes | ADI Print Invoices and Timesheets 2018 | |
| 65 | | 4/8/2024 | | Yes | Big Hearted Books 2017 Invoices | |
| 66 | | 4/8/2024 | | Yes | Deschamps Invoices and Timesheets 2017 | |
| 67 | | 4/8/2024 | | Yes | Deschamps Invoices and Timesheets 2018 | |
| 68 | | 4/8/2024 | | Yes | F.J. O'Hara & Sons Invoices and Timesheets 2017 | |
| 69 | | 4/8/2024 | | Yes | F.J. O'Hara & Sons Invoices and Timesheets 2018 | |
| 70 | | 4/8/2024 | | Yes | F.J. O'Hara & Sons Invoices and Timesheets 2019-2020 | |
| 71 | | 4/8/2024 | | Yes | Kirkwood Printing Invoices 2017 | |
| 72 | | 4/8/2024 | | Yes | Melville Candy Invoices and Timesheets 2015 | |
| 73 | | 4/8/2024 | | Yes | Melville Candy Invoices and Timesheets 2016 | |
| 74 | | 4/8/2024 | | Yes | Melville Candy Invoices and Timesheets 2017 | |
| 75 | | 4/8/2024 | | Yes | Melville Candy Invoices and Timesheets 2018 | |
| 76 | | 4/8/2024 | | Yes | Melville Candy Invoices and Timesheets 2019 | |
| 77 | | 4/8/2024 | | Yes | Polaris Direct Invoices and Timesheets 2017 | |
| 78 | | 4/8/2024 | | Yes | RoloData Invoices 2015 | |
| 79 | | 4/8/2024 | | Yes | RoloData Invoices 2016 | |

**GA: 3**

✎ AO 187A (Rev. 7/87)    **EXHIBIT AND WITNESS LIST – CONTINUATION**

| United States of America | | vs. | Lilian Giang | | CASE NO. 23-cr-10062-RGS |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 80 | | 4/8/2024 | | Yes | RoloData Invoices 2017 |
| 81 | | 4/8/2024 | | Yes | Signature Printing Invoices 2015 |
| 82 | | 4/8/2024 | | Yes | Signature Printing Invoices 2016 |
| 83 | | 4/8/2024 | | Yes | Signature Printing Invoices 2017 |
| 84 | | 4/8/2024 | | Yes | Signature Printing Invoices 2018 |
| 85 | | 4/8/2024 | | Yes | Signature Printing Invoices 2019 |
| 86 | | 4/8/2024 | | Yes | Signature Printing Invoices 2020 |
| 87 | | 4/8/2024 | | Yes | Universal Wilde Invoices 2016 |
| 88 | | 4/8/2024 | | Yes | Universal Wilde Invoices 2017 |
| 89 | | 4/8/2024 | | Yes | Universal Wilde Invoices 2018 |
| 90 | | 4/8/2024 | | Yes | USAO-003926-Able Temp Payroll 3.15.17-9.20.17 |
| 91 | | 4/8/2024 | | Yes | USAO-003927-Able Temp Payroll 4.27.16-3.15.17 |
| 92 | | 4/8/2024 | | Yes | USAO-003928-Able Temp Payroll 9.27.17-10.9.18 |
| 93 | | 4/8/2024 | | Yes | USAO-003929-Able Temp Payroll 10.9.18-7.10.20 |
| 94 | | 4/8/2024 | | Yes | USAO-003930-Able Temp Payroll 12.11.15-4.27.16 |
| 95 | | 4/8/2024 | | Yes | 2018-10-15_Rockland Trust Bank Email |
| 96 | | 4/8/2024 | | Yes | Bank of Canton records |
| 97 | | 4/8/2024 | | Yes | Citizens Bank records |
| 99 | | 4/8/2024 | | Yes | Rockland Trust records |
| 100 | | 4/8/2024 | | Yes | Santander records |
| 101 | | 4/8/2024 | | Yes | Blank Form 941 |
| 102 | | 4/8/2024 | | Yes | 201512 ABLE TEMP AGENCY Transcript of Account 941 |
| 103 | | 4/8/2024 | | Yes | 201603 ABLE TEMP AGENCY Transcript of Account 941 |
| 104 | | 4/8/2024 | | Yes | 201606 ABLE TEMP AGENCY Transcript of Account 941 |
| 105 | | 4/8/2024 | | Yes | 201609 ABLE TEMP AGENCY Transcript of Account 941 |
| 106 | | 4/8/2024 | | Yes | 201612 ABLE TEMP AGENCY Transcript of Account 941 |
| 107 | | 4/8/2024 | | Yes | 201703 ABLE TEMP AGENCY Transcript of Account 941 |

GA: 4

✎AO 187A (Rev. 7/87)          **EXHIBIT AND WITNESS LIST – CONTINUATION**

| United States of America | | | | vs. | Lilian Giang | CASE NO.<br>23-cr-10062-RGS |
|---|---|---|---|---|---|---|

| PLF.<br>NO. | DEF.<br>NO. | DATE<br>OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 108 | | 4/8/2024 | | Yes | 201706 ABLE TEMP AGENCY Transcript of Account 941 |
| 109 | | 4/8/2024 | | Yes | 201709 ABLE TEMP AGENCY Transcript of Account 941 |
| 110 | | 4/8/2024 | | Yes | 201712 ABLE TEMP AGENCY Transcript of Account 941 |
| 111 | | 4/8/2024 | | Yes | 201803 ABLE TEMP AGENCY Transcript of Account 941 |
| 112 | | 4/8/2024 | | Yes | 201806 ABLE TEMP AGENCY Transcript of Account 941 |
| 113 | | 4/8/2024 | | Yes | 201809 ABLE TEMP AGENCY Transcript of Account 941 |
| 114 | | 4/8/2024 | | Yes | 201812 ABLE TEMP AGENCY Transcript of Account 941 |
| 115 | | 4/8/2024 | | Yes | 201903 ABLE TEMP AGENCY Transcript of Account 941 |
| 116 | | 4/8/2024 | | Yes | 201906 ABLE TEMP AGENCY Transcript of Account 941 |
| 117 | | 4/8/2024 | | Yes | 201909 ABLE TEMP AGENCY Transcript of Account 941 |
| 118 | | 4/8/2024 | | Yes | 201912 ABLE TEMP AGENCY Transcript of Account 941 |
| 119 | | 4/8/2024 | | Yes | Summary Chart - Customer Receipts comparison |
| 120 | | 4/8/2024 | | Yes | Summary Chart - Employee payroll |
| 121 | | 4/8/2024 | | Yes | Summary Chart - Unreported Payroll (inv hrs) |
| 122 | | 4/8/2024 | | Yes | Summary Chart - Cash transactions detail |
| 123 | | 4/8/2024 | | Yes | Summary Chart - Cash transactions summary |
| 124 | | 4/8/2024 | | Yes | Summary Chart - 2017 Quarterly Financial Activity |
| 125 | | 4/8/2024 | | Yes | Summary Chart - Corrected Payroll Taxes Due and Owing |
| WIT | | 4/8/2024 | | | Government calls witness Gary Melville, Melville Candy |
| WIT | | 4/8/2024 | | | Government calls witness Ralph Dumican, Universal Wilde Westwood |
| WIT | | 4/9/2024 | | | Government calls witness Ly Nguyen, Rockland Trust Bank |
| WIT | | 4/9/2024 | | | Government calls witness Dung Nguyen, Dorchester, Massachusetts |
| WIT | | 4/9/2024 | | | Government calls witness Nam Nguyen, Dorchester, Massachusetts |
| WIT | | 4/9/2024 | | | Government calls witness Mi Giang-Kul, Billerica, Massachusetts |
| | 126 | 4/9/2024 | | Yes | Maria Giang-Kul email |
| | 127 | 4/9/2024 | | Yes | Maria Giang-Kul emails  to Wayne Hussey |
| WIT | | 4/9/2024 | | | Government calls witness Shawn Curreri, Travelers Insurance |

**GA: 5**

✎AO 187A (Rev. 7/87)    **EXHIBIT AND WITNESS LIST – CONTINUATION**

| United States of America | | vs. | | Lilian Giang | | CASE NO. 23-cr-10062-RGS |
|---|---|---|---|---|---|---|

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| | 128 | 4/10/2024 | | Yes | Check reigster |
| | 129 | 4/10/2024 | | Yes | Travelers Application |
| WIT | | 4/10/2024 | | | Government calls witness Nicholas Comtois, Internal Revenue Service |
| WIT | | 4/10/2024 | | | Government calls witness Lauren George, US Attorney's Office |
| | WIT | 4/10/2024 | | | Defense calls witness Wayne Hussey, New Hampshire Bookkeping Service |
| | WIT | 4/10/2024 | | | Defense calls witness Lilian Giang |
| 130 | | 4/10/2024 | | Yes | Able Temp Agency W2 Lilian Giang |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Page __6__ of __6__ Pages

**GA: 6**

## ABLE TEMP AGENCY INC
## Summary of Customer Deposit Receipts / Billing Invoices to Customers

| | 2015 (Q4) | 2016 | 2017 | 2018 | 2019 | Total |
|---|---|---|---|---|---|---|
| **Per Able Temp / Giang Bank Deposits:** | | | | | | |
| ADI Print Solutions | $2,084 | $3,189 | $3,748 | $396 | | $9,417 |
| Big Hearted Books | $22,368 | $549,238 | $918,145 | $46,800 | | $1,536,551 |
| Deschamps Printing | $5,984 | $14,454 | $18,939 | $24,232 | | $63,609 |
| FAO Graphics | | | $596 | | | $596 |
| FJ O'Hara & Sons | | | $22,693 | $68,899 | $100,285 | $191,877 |
| G & J Holdings LLC | | | | | $82,933 | $82,933 |
| HLN Publishing | | | $364 | | | $364 |
| Kirkwood Printing Company | | | $9,656 | $25,456 | | $35,112 |
| LPC Removal Service | | $408 | | | | $408 |
| Melville Candy | $56,528 | $53,613 | $304,698 | $774,440 | $1,007,843 | $2,197,122 |
| Polaris Direct | | | $6,008 | | | $6,008 |
| PrintBoston | | | $870 | | | $870 |
| RoloData | $1,023 | $176 | | | | $1,199 |
| Signature Printing | $23,390 | $91,976 | $99,503 | $139,251 | $111,533 | $465,653 |
| Universal Wilde | $23,592 | $292,356 | $194,335 | $7,440 | | $517,723 |
| | **$134,969** | **$1,005,410** | **$1,579,555** | **$1,086,914** | **$1,302,594** | **$5,109,442** |
| | | | | | | |
| **Per Able Temp Invoices:** | | | | | | |
| ADI Print Solutions | $352 | $3,299 | $3,572 | $780 | | $8,003 |
| Big Hearted Books | | | $800,839 | $13,845 | | $814,684 |
| Deschamps Printing | | | $2,288 | $16,952 | | $19,240 |
| FAO Graphics | | | | | | $0 |
| FJ O'Hara & Sons | | | $24,087 | $71,467 | $99,578 | $195,132 |
| G & J Holdings LLC | | | | | | $0 |
| HLN Publishing | | | | | | $0 |
| Kirkwood Printing Company | | | $35,112 | | | $35,112 |
| LPC Removal Service | | | | | | $0 |
| Melville Candy | $56,528 | $59,593 | $323,940 | $749,214 | $1,031,730 | $2,221,005 |
| Polaris Direct | | | $6,008 | | | $6,008 |
| PrintBoston | | | | | | $0 |
| RoloData | $1,287 | $352 | $870 | | | $2,509 |
| Signature Printing | $28,016 | $87,349 | $118,844 | $126,182 | $120,187 | $480,578 |
| Universal Wilde | | $252,420 | $129,336 | $7,440 | | $389,196 |
| | **$86,183** | **$403,013** | **$1,444,896** | **$985,880** | **$1,251,495** | **$4,171,467** |
| | | | | | | |
| **Difference** | ($48,786) | ($602,397) | ($134,659) | ($101,034) | ($51,099) | ($937,975) |

**GOVERNMENT EXHIBIT**

**119**

23-cr-10062-RGS

USAO-015301

**GA: 7**

**Able Temp Agency Inc - Employee Payroll**
**Gross Wages Reported on Forms W-2, Wage and Tax Statement**

| | 2015 | 2016 | 2017 | 2018 | 2019 | Total |
|---|---|---|---|---|---|---|
| Binh T Nguyen | | | $1,980 | $5,060 | $6,160 | $13,200 |
| Chung T Nguyen | | | | $4,400 | $4,400 | $8,800 |
| Dung T Nguyen | | $3,200 | $10,340 | $3,300 | $1,320 | $18,160 |
| Dung X Huynh | $1,080 | $8,700 | $10,540 | $3,740 | $6,600 | $30,660 |
| Edwin Giang | | $15,600 | $22,840 | $18,040 | $5,280 | $61,760 |
| Ha N Tran | | | $1,760 | $5,280 | $6,160 | $13,200 |
| Hoang P Nguyen | | | $5,060 | $2,420 | | $7,480 |
| Hong C Giang | | | $12,140 | $2,160 | | $14,300 |
| Kieu T Mai | | | $10,560 | $4,840 | $660 | $16,060 |
| Lilian N Giang | $1,440 | $25,440 | $24,960 | $19,680 | $24,960 | $96,480 |
| Linh L Bui | | $8,200 | $11,200 | $5,500 | $10,780 | $35,680 |
| Mai X Huynh | | $8,200 | $10,980 | $5,280 | $8,283 | $32,743 |
| Nam N Nguyen | | $9,200 | $10,980 | | | $20,180 |
| Nhung T Nguyen | | $2,280 | $740 | | | $3,020 |
| Tan K Duong | | $2,400 | $10,100 | | | $12,500 |
| Thanh Nguyen | | | | | $4,565 | $4,565 |
| To M Thi | $540 | $10,120 | $8,560 | $5,720 | $11,220 | $36,160 |
| Trevor A Bishop-Williams | | | $22,000 | $18,040 | $5,280 | $45,320 |
| Tri T Dang | | | $8,360 | $2,200 | | $10,560 |
| Truc T Le | | | $2,200 | | | $2,200 |
| Venancio R Martins | | $5,600 | | | | $5,600 |
| Yen T Bach | | | $10,560 | $1,980 | | $12,540 |
| | $3,060 | $98,940 | $195,860 | $107,640 | $95,668 | $501,168 |

GOVERNMENT
EXHIBIT

**120**

23-cr-10062-RGS

USAO-015302

GA: 8

## ABLE TEMP AGENCY INC
## Calculation of Unreported Payroll Based on Able Temp Invoice Hours

| Qtr | Hours Worked per Able Temp Invoices | Minimum Hourly Wage | Calculated Expected Payroll | Actual Reported Payroll | Calculated Unreported Payroll |
|---|---|---|---|---|---|
| 2015_Q4 | 7,683.00 | $9 | $69,147 | $3,060 | $66,087 |
| 2016_Q1 | 2,425.45 | $10 | $24,255 | $16,140 | $8,115 |
| 2016_Q2 | 3,512.50 | $10 | $35,125 | $27,120 | $8,005 |
| 2016_Q3 | 11,456.00 | $10 | $114,560 | $26,560 | $88,000 |
| 2016_Q4 | 16,921.50 | $10 | $169,215 | $29,120 | $140,095 |
| 2017_Q1 | 8,025.00 | $11 | $88,275 | $42,240 | $46,035 |
| 2017_Q2 | 14,322.50 | $11 | $157,548 | $49,580 | $107,968 |
| 2017_Q3 | 43,020.25 | $11 | $473,223 | $53,520 | $419,703 |
| 2017_Q4 | 48,096.61 | $11 | $529,063 | $50,520 | $478,543 |
| 2018_Q1 | 12,654.25 | $11 | $139,197 | $37,620 | $101,577 |
| 2018_Q2 | 4,965.90 | $11 | $54,625 | $18,560 | $36,065 |
| 2018_Q3 | 16,003.97 | $11 | $176,044 | $5,800 | $170,244 |
| 2018_Q4 | 44,404.03 | $11 | $488,444 | $45,660 | $442,784 |
| 2019_Q1 | 15,773.15 | $12 | $189,278 | $29,300 | $159,978 |
| 2019_Q2 | 5,521.08 | $12 | $66,253 | $16,807 | $49,446 |
| 2019_Q3 | 28,860.60 | $12 | $346,327 | $22,161 | $324,166 |
| 2019_Q4 | 50,095.42 | $12 | $601,145 | $27,400 | $573,745 |
| | 333,741.21 | | $3,721,722 | $501,168 * | $3,220,554 |

*See Reported Payroll by Employee at Gov't Exhibit #120*

**GOVERNMENT EXHIBIT**

**121**

**23-cr-10062-RGS**

USAO-015303

GA: 9

## ABLE TEMP AGENCY INC / LILIAN GIANG
## Summary of Cash Withdrawals, Net of Cash Deposits

| | 2015 (Q4) | 2016 | 2017 | 2018 | 2019 | Total |
|---|---|---|---|---|---|---|
| **Able Temp Agency Inc** | | | | | | |
| Bank of Canton *0491 | | ($87,148) | ($101,134) | $893 | ($131) | ($187,520) |
| Citizens Bank *0948 | ($108,700) | ($69,347) | | | | ($178,047) |
| Rockland Trust *1505 | | ($187,503) | ($1,002,300) | ($738,700) | ($920,240) | ($2,848,743) |
| Santander *9337 | | ($360,300) | | | | ($360,300) |
| | ($108,700) | ($704,298) | ($1,103,434) | ($737,807) | ($920,371) | ($3,574,610) |
| | | | | | | |
| **Lilian Giang (personal)** | | | | | | |
| Citizens Bank *0044 | ($6,400) | $528 | | | | ($5,872) |
| Rockland Trust *0291 | | ($2,400) | $4,900 | ($6,900) | ($15,070) | ($19,470) |
| Rockland Trust *5802 | | | | ($16,500) | ($22,700) | ($39,200) |
| Santander *6490 | | ($5,183) | | | | ($5,183) |
| | ($6,400) | ($7,055) | $4,900 | ($23,400) | ($37,770) | ($69,725) |
| | | | | | | |
| **Combined** | ($115,100) | ($711,353) | ($1,098,534) | ($761,207) | ($958,141) | ($3,644,335) |

| | 2015 (Q4) | 2016 | 2017 | 2018 | 2019 | Total |
|---|---|---|---|---|---|---|
| Cash IN | $2,800 | $22,780 | $40,826 | $1,894 | $550 | $68,849 |
| Cash OUT | ($117,900) | ($734,134) | ($1,139,360) | ($763,100) | ($958,691) | ($3,713,185) |
| Net | ($115,100) | ($711,354) | ($1,098,534) | ($761,207) | ($958,141) | ($3,644,335) |

**GA: 10**

**ABLE TEMP AGENCY INC**
**2017 Quarterly Financial Activity**

| | 2017 | | | | |
| --- | --- | --- | --- | --- | --- |
| | Q1 | Q2 | Q3 | Q4 | Total |
| **Customer Deposit Receipts** | **$314,246** | **$290,481** | **$469,280** | **$505,548** | **$1,579,555** |
| | | | | | |
| **Expected Payroll based on Inv Hrs** | | | | | |
| Hours invoiced | **$88,275** | **$157,548** | **$473,223** | **$529,063** | **$1,248,108** |
| Min wage $11/hour | 8,025.00 | 14,322.50 | 43,020.25 | 48,096.61 | |
| | $11 | $11 | $11 | $11 | |
| | | | | | |
| **Reported Gross Payroll based on Quarterly Form 941s** | **$42,240** | **$49,580** | **$53,520** | **$50,520** | **$195,860** |
| reported number of employees | 12 | 15 | 15 | 11 | |
| | | | | | |
| **Payroll Checks (net of withholdings)** | **$34,421** | **$40,422** | **$43,665** | **$41,254** | **$159,762** |
| Lilian Giang (net payroll) | $4,736 | $4,736 | $4,736 | $4,736 | $18,944 |
| all others (net payroll) | $29,685 | $35,686 | $38,929 | $36,518 | $140,818 |
| all others (# of employees receiving paychecks) | 13 | 14 | 15 | 16 | |
| | | | | | |
| **Additional checks paid to individuals (no pay period referenced)** | **$17,331** | **$12,980** | **$84,859** | **$67,200** | **$182,370** |
| addt'l checks paid to individuals on reported payroll | $3,036 | $5,065 | $39,875 | $36,625 | $84,601 |
| # of employees receiving addt'l checks | 2 | 5 | 12 | 10 | |
| addt'l checks paid to individuals not on reported payroll | $14,295 | $7,915 | $44,984 | $30,575 | $97,769 |
| # of individuals receiving addt'l checks | 5 | 5 | 23 | 12 | |
| | | | | | |
| **Cash Withdrawals, Net of Cash Deposits** | **$222,374** | **$210,500** | **$297,860** | **$367,800** | **$1,098,534** |

GOVERNMENT
EXHIBIT

**124**

23-cr-10062-RGS

GA: 11

## ABLE TEMP AGENCY INC
## Calculation of Corrected Payroll Taxes Due and Owing

| Qtr | Calculated Unreported Payroll | Social Security Tax @ 12.4% Employer Portion | Social Security Tax @ 12.4% Employee Portion | Medicare Tax @ 2.9% Employer Portion | Medicare Tax @ 2.9% Employee Portion | Income Tax Withholding @ 10% | Total Payroll Tax Due and Owing |
|---|---|---|---|---|---|---|---|
| 2015_Q4 | $66,087 | $4,097 | $4,097 | $958 | $958 | $6,609 | $16,720 |
| 2016_Q1 | $8,115 | $503 | $503 | $118 | $118 | $811 | $2,053 |
| 2016_Q2 | $8,005 | $496 | $496 | $116 | $116 | $801 | $2,025 |
| 2016_Q3 | $88,000 | $5,456 | $5,456 | $1,276 | $1,276 | $8,800 | $22,264 |
| 2016_Q4 | $140,095 | $8,686 | $8,686 | $2,031 | $2,031 | $14,010 | $35,444 |
| 2017_Q1 | $46,035 | $2,854 | $2,854 | $668 | $668 | $4,604 | $11,647 |
| 2017_Q2 | $107,968 | $6,694 | $6,694 | $1,566 | $1,566 | $10,797 | $27,316 |
| 2017_Q3 | $419,703 | $26,022 | $26,022 | $6,086 | $6,086 | $41,970 | $106,185 |
| 2017_Q4 | $478,543 | $29,670 | $29,670 | $6,939 | $6,939 | $47,854 | $121,071 |
| 2018_Q1 | $101,577 | $6,298 | $6,298 | $1,473 | $1,473 | $10,158 | $25,699 |
| 2018_Q2 | $36,065 | $2,236 | $2,236 | $523 | $523 | $3,606 | $9,124 |
| 2018_Q3 | $170,244 | $10,555 | $10,555 | $2,469 | $2,469 | $17,024 | $43,072 |
| 2018_Q4 | $442,784 | $27,453 | $27,453 | $6,420 | $6,420 | $44,278 | $112,024 |
| 2019_Q1 | $159,978 | $9,919 | $9,919 | $2,320 | $2,320 | $15,998 | $40,474 |
| 2019_Q2 | $49,446 | $3,066 | $3,066 | $717 | $717 | $4,945 | $12,510 |
| 2019_Q3 | $324,166 | $20,098 | $20,098 | $4,700 | $4,700 | $32,417 | $82,014 |
| 2019_Q4 | $573,745 | $35,572 | $35,572 | $8,319 | $8,319 | $57,375 | $145,157 |
| | $3,220,554 * | $199,674 | $199,674 | $46,698 | $46,698 | $322,055 | $814,800 |

*See Calculated Unreported Payroll at Gov't Exhibit #121*

GOVERNMENT
EXHIBIT
125
23-cr-10062-RGS

USAO-015324

GA: 12