UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

No. 24-1829
_____
_____

UNITED STATES,
Appellee,

v.

LILIAN GIANG,
Defendant-Appellant.
_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

REPLY BRIEF OF DEFENDANT-APPELLANT
LILIAN GIANG
_____

Christine DeMaso
Assistant Federal Public Defender
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
Identification No.: 1168061

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES.................................................................. iii

ARGUMENT....................................................................................... 1

I.  There was insufficient evidence of mail fraud.
(Reply to GBr. 7-11.)..................................................................... 1

II.  The court improperly admitted evidence related to the federal
requirement that banks report withdrawals over $10,000.
(Reply to  G.Br. 11-16.)................................................................. 5

III.  The court erred by not giving an implicit-bias instruction.
(Reply to  GBr. 17-22.)................................................................ 10

IV.  The court's good-faith and employment-tax instructions
improperly reduced the government's burden to prove every
element of the offenses charged. (Reply to GBr. 22-34.)................... 13

   A.  The employment-tax instruction contained an incomplete
statement of law. This issue was preserved below......................... 13

B.  The good-faith instruction erroneously reduced the government's burden of proof............................................................16

CONCLUSION ..........................................................................................19

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .................................20

CERTIFICATE OF SERVICE ...................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Cheek v. United States*,
498 U.S. 192 (1991) ................................................................16, 17, 18, 19

*United States v. Castillo*,
981 F.3d 94 (1st Cir. 2020) ...................................................................11, 14

*United States v. Contenti*,
735 F.2d 628 (1st Cir. 1984) ..........................................................................4

*United States v. Figueroa-Lugo*,
793 F.3d 179 (1st Cir. 2015) ........................................................................12

*United States v. Hebshie*,
549 F.3d 30 (1st Cir. 2008) .............................................................................4

*United States v. Jae Shik Cha*,
97 F.3d 1462 (9th Cir. 1996) (unpublished) ........................................9, 10

*United States v. McLellan*,
959 F.3d 442 (1st Cir. 2020) ........................................................................12

*United States v. Mills*,
2022 WL 2901005 (3d Cir.) (unpublished)...................................................9

*United States v. Morrow*,
39 F.3d 1228 (1st Cir. 1994) ..........................................................................4

*United States v. Pimental*,
380 F.3d 575 (1st Cir. 2004) ..........................................................................4

*United States v. Ristovski*,
    211 F.3d 1271 (6th Cir. 2000) (unpublished) ............................................9

*United States v. Souza*,
    749 F.3d 74 (1st Cir. 2014) ....................................................................6, 7, 8

*United States v. Varoudakis*,
    233 F.3d 113 (1st Cir. 2000) .......................................................................9

*United States v. Weadick*,
    15 F.4th 1 (1st Cir. 2021) ...........................................................................6

**Rules**

Fed. R. Evid. 104 .....................................................................................5, 6

Fed. R. Evid. 402 ........................................................................................6

Fed. R. Evid. 403 ........................................................................................6

Fed. R. Evid. 404 ........................................................................................6

# ARGUMENT[1]

## I.    There was insufficient evidence of mail fraud. (Reply to GBr. 7-11.)

Ms. Giang argues that the government presented insufficient evidence that there was a mailing in furtherance of the charged mail fraud and that she could have foreseen any such mailing. Br. 17-25. The government counters that the testimony of Shane Curreri, a senior investigator with Travelers, sufficed to prove both elements. GBr. 8-11. The purported mailing at issue is a 2018 premium adjustment notice. Br. 17; JA.I 17; JA.II 687-90. The government argues that Mr. Curreri's testimony that premium adjustment notices are "'sent by regular mail' from the Travelers 'printing office which is in Norcross, Georgia,'" was sufficient to establish that Ms. Giang caused a mailing in furtherance of the charged fraud. GBr. 8-11. It argues that any 2018 mailing was foreseeable because his testimony showed that "Travelers had mailed" Ms. Giang three premium adjustment notices before 2018. GBr. 8-11.

---

[1] Citations are as follows: JA is the joint appendix; SA is the sealed appendix; DE is a district court docket entry; Br. is Ms. Giang's opening brief; and GBr. is the government's brief.

The government mischaracterizes the testimony and evidence. Citing his general testimony about workers' compensation insurance, it describes Mr. Curreri as "well acquainted" with Travelers' business. GBr. 8 (citing JA.I 350-56). None of Mr. Curreri's testimony demonstrated familiarity with the administrative aspects of Travelers' communications with policy-holders or suggested that he knew about the mailing process for premium adjustment notices. He was not involved with Able's policy until 2020 and did not testify to personal knowledge of what Travelers sent Ms. Giang before that time. JA.I 357; JA.II 396.

The government understates an important inconsistency in Mr. Curreri's testimony. GBr. 9. When asked "How does Travelers send out Premium Adjustment Notices to its customers?" he replied that they are "sent by regular mail" from Travelers' "printing office which is in Norcross, Georgia." JA.I 356. The evidence contradicted this testimony. The 2018 notice lists a Connecticut address for Travelers RMD, indicating that Mr. Curreri incorrectly testified that these notices are sent from Georgia and did not have knowledge of the company's mailing processes. *See* JA.II 687. When he was shown the notice, he testified that it was "mailed from Travelers RMD," as indicated by the Connecticut address on the form. JA.I

371; JA.II 687. He did not explain his prior testimony. The government's sufficiency argument rests on Mr. Curreri's testimony. GBr. 8-11. The fact that the evidence contradicted his testimony shows that he did not have sufficient knowledge and that Ms. Giang's conviction cannot rest on his testimony. *See* Br. 17-24.

The government states that Mr. Curreri "testified that Travelers had *mailed* [Ms.] Giang three" premium adjustment notices before 2018. GBr. 8 (emphasis added). He did not. His testimony about pre-2018 premium adjustment notices was that he "believed" Ms. Giang "would have been" "sent" three premium adjustment notices before 2018. JA.I 370. The government did not introduce any pre-2018 premium adjustment notices or evidence of how any such documents were "sent."

Ms. Giang argues that because she communicated with Travelers electronically and Travelers said she could do the audit and get the premium adjustment notice online, she could not have reasonably foreseen that Travelers would mail her anything. Br. 22-23. The government argues that it is "immaterial the notice may also have been 'available electronically'" and that her other communications with Travelers were electronic. GBr. 10. This argument incorrectly assumes that the premium

adjustment notice was mailed *and* sent electronically. The government did not introduce sufficient evidence that the notice was mailed. Travelers told Ms. Giang her premium adjustment notice would be available electronically, and they communicated electronically. Br. 22-23. The government did not prove that Travelers mailed Ms. Giang the 2018 notice or that she could have reasonably foreseen it would do so.

The cases the government cites are not to the contrary. *See* GBr. 9 (citing *United States v. Hebshie*, 549 F.3d 30, 36-37 (1st Cir. 2008); *United States v. Pimental*, 380 F.3d 575, 588 (1st Cir. 2004); *United States v. Morrow*, 39 F.3d 1228, 1237 (1st Cir. 1994); *United States v. Contenti*, 735 F.2d 628, 632 (1st Cir. 1984)). These cases held that an incidental mailing can satisfy this element and that a mailing can be reasonably foreseeable within the context of communications conducted through the mails. *See* Br. 22-23. The government notes that the use of the mails, not a particular mailing, must be foreseeable. GBr. 9 (citing *Pimental*, 380 F.3d at 588). This case does not involve an ongoing pattern of mailings. There is no evidence that Ms. Giang ever mailed Travelers anything. Given the electronic nature of her communications with Travelers and its statements that her audit could be conducted online, Ms. Giang could not reasonably foresee that Travelers

4

would *mail* her anything. Br. 22-23; JA.I 357-72; JA.II 385-91, 396-403, 406-08, 691-92, 714-15.

The government asserts that Ms. Giang has argued that Mr. Curreri's "testimony was inadmissible for lack of an adequate foundation." GBr. 10. It states that such an argument was insufficiently developed on appeal and not raised below. *Id.* Ms. Giang does not argue that Mr. Curreri's testimony was inadmissible. She argues that his testimony was insufficient to support her mail-fraud conviction. Br. 17-25. No one with personal knowledge testified that premium adjustment notices are usually mailed or that *this* premium notice was mailed. *Id.* Ms. Giang communicated with Travelers electronically, and Travelers told her that this form would be available online. *Id.* Given this dearth of evidence, Ms. Giang's conviction for mail fraud was a clear and gross injustice and must be vacated. *Id.* The case must be remanded for resentencing. *See* Br. 23-25.

## II. The court improperly admitted evidence related to the federal requirement that banks report withdrawals over $10,000. (Reply to G.Br. 11-16.)

Ms. Giang contends that the court improperly admitted evidence related to federal bank reporting requirements. Br. 25-31. The government argues that Rule 104(a) is irrelevant because Ms. Giang's argument goes to

the weight, not the admissibility of the evidence. GBr. 12. The case the government cites is distinguishable. *Id.* (citing *United States v. Weadick*, 15 F.4th 1, 18-19 (1st Cir. 2021)). The defendant in *Weadick* challenged, under Rules 402, 403, and 404(b), evidence that he and a coconspirator were involved in prior crimes. 15 F.4th at 17. He argued, in part, that it should not have been admitted because the evidence that he was involved in these crimes was weak. *Id.* at 18-19. This Court concluded that this argument went to the strength of the evidence, not its admissibility. *Id.*

Ms. Giang's Rule 104 argument is different; she asserts that evidence about federal reporting requirements and her knowledge of them was irrelevant because there was no evidence that she intentionally limited her withdrawals to avoid them. Br. 25-31; JA.I 91-94; JA.II 556-57, 564. The government argues that the evidence supports an inference of structuring because Ms. Giang withdrew $8000-$9500 at a time, sometimes on the same or consecutive days.[2] GBr. 12-13. It says this behavior is evidence of

---

[2] *United States v. Souza* is distinguishable. *See* GBr. 13 (citing *United States v. Souza*, 749 F.3d 74 (1st Cir. 2014)). *Souza* did not involve a sufficiency challenge and did not consider what evidence would be sufficient to support a structuring conviction. 749 F.3d at 74. Additionally, the facts were more egregious than those presented here. *Id*. at 79 ("[W]ithin a

structuring even though Ms. Giang repeatedly withdrew more than $10,000 at once after purportedly being informed of the reporting requirement.

The parties disagree about the significance of the fact that Ms. Giang repeatedly withdrew more than $10,000 after purportedly being told about the reporting requirements. *Compare* Br. 28-31 *with* GBr. 13-14, n.3. The government characterizes this behavior as nefarious, arguing that "her structuring conduct abruptly ceased after she realized she was under scrutiny." GBr. 13-14, n.3. This position—that Ms. Giang structured transactions to hide her failure to properly withhold taxes but changed her behavior and voluntarily triggered the reporting requirements when the bank mentioned them—is implausible. If Ms. Giang was aware of structuring before 2018 and worried the reports would reveal a tax crime, she would not have begun triggering such reports even if the bank spoke to her about it. A more plausible reading of the record is that Ms. Giang was unaware of reporting requirements and withdrew the money she needed, as she needed it. The reporting requirements did not control the amount she withdrew, as shown by her willingness to withdraw more than $10,000

period of an hour and a half, Souza withdrew $54,000 in six separate installments of $9000 at five different Sovereign branches….").

even after she purportedly learned of the requirements. JA.II 451-56, 472-73, 834-51.

The government's arguments that this evidence was "highly probative," shows she acted "willfully," rebutted her defense, and was intrinsic depend on the inference that Ms. Giang intentionally avoided the reporting requirements. GBr. 13-14. Without this inference, the evidence was irrelevant and highly prejudicial. Br. 25-31. Even assuming, arguendo, that Ms. Giang sometimes intentionally avoided reporting requirements, the fact that her behavior changed during the charged offenses indicates that any structuring was not related to the charged offenses.[3] Br. 29-31.

The government argues that this evidence was not unfairly prejudicial. GBr. 15. It does not address Ms. Giang's contention that this evidence was not only unfairly prejudicial, it also confused the issues and

---

[3] This case is distinguishable from *Souza*, which concluded that evidence that the structured funds were the product of fraud intrinsic to the charged structuring offense. 749 F.3d at 84. Evidence of the uncharged fraud helped to explain why the defendant wanted to avoid reporting and made multiple withdrawals. *Id*. Here, evidence about reporting requirements was not related to the charged conduct. During the period of the charged offense, Ms. Giang routinely withdrew thousands of dollars. JA.II 451-56, 472-73, 834-51. After she purportedly learned about federal reporting requirements, she repeatedly withdrew more than $10,000 at a time, showing her indifference to triggering these reports. *Id*.

misled the jury. Br. 30-31; *see United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000). This evidence raised the distracting and irrelevant question of whether Ms. Giang tried to avoid triggering the reporting requirements. Br. 30-31. The jury had no instructions or explanation of structuring to guide it. *Id.*

The government cites three unpublished and distinguishable out-of-Circuit cases to show that the court did not abuse its discretion. In *United States v. Mills*, as part of its sufficiency review, the Court stated that a juror could view evidence that the defendant used "cash and checks to avoid triggering the $10,000 reporting requirement" as evidence that the defendant acted willfully. 2022 WL 2901005, at *2 (3d Cir.) (unpublished). There was no explanation of what evidence was admitted, and the Court did not consider a challenge to its admission. *Id.* The evidence of structuring in *United States v. Ristovski*, was stronger than here, including evidence that the defendant was aware of the reporting requirement and directed others to cash checks totaling more than $10,000 at different bank branches. 211 F.3d 1271 (6th Cir. 2000) (unpublished). *United States v. Jae Shik Cha* described evidence of structuring as intrinsic to the charged

money laundering, but did not describe what the evidence was. 97 F.3d 1462 (9th Cir. 1996) (unpublished).

The court abused its discretion by admitting evidence of reporting requirements and Ms. Giang's supposed efforts to avoid them. Br. 25-31. This evidence was unfairly prejudicial and had marginal, if any relevance. *Id.* The government does not counter Ms. Giang's argument that if this evidence was wrongly admitted, her convictions on all 5 counts must be vacated. Br. 31.

## III. The court erred by not giving an implicit-bias instruction. (Reply to GBr. 17-22.)

The court abused its discretion by not giving an implicit-bias instruction after empanelment and before deliberations. Br. 31-40. The government incorrectly argues that this claim was not preserved. GBr. 17-22. Ms. Giang filed proposed jury instructions requesting implicit-bias instructions, including footnotes explaining the need for and purpose of these instructions. JA.I 45-50. She objected when the court did not give these instructions after empanelment and before deliberations. JA.I 190; JA.II 608-09. These objections were sufficient to ensure that the court was

aware of the issue and to preserve it for appeal. *See United States v. Castillo*, 981 F.3d 94, 101-02 (1st Cir. 2020).

The government faults counsel for not objecting to the court's voir-dire questioning. GBr. 18. Voir dire and jury instructions are separate issues. Counsel for both parties filed requests for voir dire questions separate from their proposed jury instructions. DE 55, 56, 59, 60. After voir dire, Ms. Giang did not object to the court's voir-dire questions. She did object to the court's decision not to include the implicit-bias instruction in its preliminary instructions to the seated jurors. JA.I 190. She objected to the court's failure to give the implicit-bias instructions at the end of trial. JA.II 608-09. The court understood the request and explained why it was not giving the instructions. JA.I 140-41, 373, 382-83; JA.II 608-09. Nothing more is needed for preservation.

The government argues that this issue is not preserved because although Ms. Giang objected to the lack of implicit-bias instructions, she did not "explain why it was important to this particular case." GBr. 19. It asserts that Ms. Giang's argument that the lack of implicit-bias instructions impaired her ability to present her defense is subject to plain-error review because it was not raised below. GBr.20. Ms. Giang's request for implicit-

bias instructions was clear, included an explanation for the request, and the court understood and decided the issue. JA.I 45-50, 140-41, 190, 373, 382-83; JA.II 608-09. That is all that is required for preservation. To prevail on appeal, Ms. Giang must show that the requested instruction supported her theory of defense, was substantially correct, was not substantially covered by other instructions, and was integral such that its omission impaired her ability to present her defense. *See United States v. Figueroa-Lugo*, 793 F.3d 179, 191 (1st Cir. 2015); *United States v. McLellan*, 959 F.3d 442, 467 (1st Cir. 2020); *see also* Br. 33-34, 36-40. Ms. Giang preserved the argument below and now supports that argument as required by this Court's caselaw. This argument is not subject to plain-error review.

Similarly, the government argues that Ms. Giang has waived arguments about the fact that the prosecutor noted that three witnesses with the same last name were related and one witness's statement that his wife could communicate with Ms. Giang because "[s]he speaks Asian." GBr. 21. It describes these events as separate from Ms. Giang's "race, ethnicity, national origin, or immigrant status." GBr. 21. On the contrary, these events demonstrate the centrality of these issues at trial. They are not freestanding arguments requiring implicit-bias instructions; they are

examples of the way race, ethnicity, national origin, and/or immigration status played a role in this trial, underscoring the need for implicit-bias instructions.

Finally, Ms. Giang does not make a broad argument that implicit-bias instructions must be given in every case. *See* GBr. 21-22. However, much research agrees with the SJC's position that such instructions should be given in all cases and supports Ms. Giang's request for such instructions. Br. 34-36; JA.I 45-50. The government does not discuss this research.

**IV. The court's good-faith and employment-tax instructions improperly reduced the government's burden to prove every element of the offenses charged. (Reply to GBr. 22-34.)**

    **A. The employment-tax instruction contained an incomplete statement of law. This issue was preserved below.**

The government incorrectly argues that Ms. Giang's claim that the employment-tax instruction was wrong should be reviewed for plain error because Ms. Giang did not request a subcontractor instruction and because the post-charge objection was "cryptic." GBr. 22-24. Ms. Giang's proposed instructions did not mention subcontractors, but they did not include the specific and detailed instructions on employment taxes that the court gave. *Compare* JA.I 63 *with* JA.II 601. Ms. Giang asked the court to explain that

employment tax is "an income tax, a Social Security tax, and a Medicare tax equal to a percentage of the wages earned by an employee." JA.I 63. This instruction did not raise the same concerns as the court's instruction. Ms. Giang objected to the court's employment-tax instruction before and after the court instructed the jury. JA.II 382-84, 608-09. The objections were clear and specific. *Id.* The court understood the objections and denied them. *Id.* Nothing more is required for preservation. *See Castillo*, 981 F.3d at 101-02.

The government incorrectly argues that "the distinction between employees and subcontractors was not an issue in this case." GBr. 25. It notes that the defense did not discuss this issue in opening and that Ms. Giang's behavior evinced inconsistencies as to whether she thought her workers were subcontractors or employees. *Id.* It does not discuss the conflicting evidence Ms. Giang cited. Br. 45-47. Both closings highlighted the difference between subcontractors and employees, and multiple witnesses gave testimony touching on the issue. *Id.* The government acknowledges that the "evidence was clear that taxes are not withheld for subcontractors." GBr. 26. The status of Ms. Giang's workers and her knowledge and understanding of their status and her responsibilities were key aspects of the defense. *See, e.g.*, JA.II 573-74, 581-83. The government

may argue that Ms. Giang's confusion about the employee-subcontractor distinction is feigned, GBr. 25, but it was an issue that the court's instructions improperly removed from the jury's consideration. Br. 44-48.

The government argues that there was no error because the court explained that the government had to prove that Ms. Giang had a duty to pay taxes, knew of the duty, and willfully disregarded it. GBr. 25-26. However, the court's employment-tax instructions effectively removed these issues from the jury's consideration by failing to recognize that employers do not have to withhold taxes for subcontractors. Even accepting, arguendo, that it does not matter whether Ms. Giang's workers were in fact employees or subcontractors, GBr. 26-27, the existence of this distinction is relevant to determining Ms. Giang's understanding of her obligations and assessing her mens rea. By ignoring this distinction and describing an employer's duties with respect to employees without acknowledging that those duties do not exist with respect to subcontractors, the court conveyed that Ms. Giang had a duty and willfully disregarded it. Br. 44-48. This instruction relieved the government of its burden to prove every element beyond a reasonable doubt. *Id.*

**B.** **The good-faith instruction erroneously reduced the government's burden of proof.**

Ms. Giang objected to the court's instruction that a person does not act in good faith if she also had the purpose of deceiving others. Br. 48-51. The government attempts to minimize this instruction by calling it a "caveat." GBr. 27-28. It asserts that Ms. Giang "implicitly conceded" that this "caveat is fully consistent with settled fraud standards." GBr. 28 (citing Br. 48-51). Ms. Giang makes no such concession. The court's instruction erroneously removed an element from the jury's consideration and reduced the government's burden of proof. Br. 48-51.

The government argues that any error would not impact the count 5 conviction because "[w]illfulness is not an element of mail fraud." GBr. 29-31. This argument is counter to the position the government took below. In its proposed jury instructions, the government included willfulness as an element of the tax counts and mail fraud. JA.I 33-36. It asked the court to include its "standard instructions as to what it means to act 'knowingly' and 'willfully'" with respect to all 5 counts. *Id*.

Even assuming, arguendo, that the *Cheek*-formulation of willfulness does not apply to these mail-fraud charges, the court's instructions reduced

the government's burden of proving all the elements of mail fraud. Br. 48-51; *see Cheek v. United States*, 498 U.S. 192, 201 (1991). The instruction shifted the focus from Ms. Giang's state of mind to whether she deceived anyone, even if the supposed deceit was unrelated to the case. *Id.* The government offers no reason to believe that the jury would have understood that the target of any deceit had to be the "victims of the offenses and not random third parties." GBr. 31. The instruction was straightforward and included no such requirement. JA.II 604-05 Further, the tax and mail-fraud counts were inextricably intertwined—if Ms. Giang did not willfully fail to pay over taxes, she did not intentionally defraud Travelers. Br. 48. The court's instruction was erroneous, and all 5 counts must be vacated.

The government argues that the court did not err with respect to the tax counts because the overall instructions sufficiently explained the intent element. GBr. 31-34. It makes a legalistic argument that although "good faith would *defeat* a finding of willfulness, the absence of good faith…would not suffice to show [Ms.] Giang acted with the specific intent to violate the tax laws." GBr. 32. A layperson acting as a juror would not have understood the instructions this way. The court instructed: "Because willfulness is an essential element of the crime, actions taken in good faith

by a defendant amount to a complete defense." JA.II 604-05. It stated that good faith "negates criminal intent." JA.II 605. These instructions made good faith the flip side of willfulness such that if the jury found no good faith, it would have found willfulness. The instructions permitted it to find a lack of good faith based on any deceit, even if unrelated to the charges. Had the jury found, for example, that Ms. Giang lied to the bank teller because she felt uncomfortable sharing her workers' personal information, these instructions would have required it to find that good faith did not exist and that she acted willfully.

This error was not harmless. The government recognizes that willfulness, as defined by *Cheek*, was "the pivotal issue" for the jury. GBr. 33. It is precisely because the willfulness standard was so important here that the court's error was harmful. Br. 48-51. The court's instructions removed a critical issue from the jury's consideration and improperly reduced the government's burden of proving mens rea. *Id.* Evidence of willfulness was not overwhelming. GBr. 33-34. Ms. Giang did not hide the cash payments she made to workers; she explained the volume of cash withdrawals to the bank and to her accountant. JA.II 571-83. She was an immigrant with limited education and little English. *Id.* It is plausible to

believe that she got caught up in the intricacies of the tax code and did not act willfully or intentionally. *Cf. Cheek*, 498 U.S. at 205; *United States v. Karani*, 984 F.3d 163, 176 (1st Cir. 2021). This instruction was not harmless error; it removed an element from the jury's consideration, reduced the government's burden of proof, and requires reversal of all counts.[4]

## CONCLUSION

For the foregoing reasons, as well as those contained in her opening brief, Ms. Giang asks this Court to vacate her conviction and order the court to dismiss count 5 and remand for resentencing and/or to vacate her convictions on all counts and remand for a new trial.

Respectfully Submitted,

*/s/ Christine DeMaso*

Christine DeMaso
Assistant Federal Public Defender
51 Sleeper St.—5th Floor
Boston, MA 02210
(617) 223-8061
Identification No. 1168061

Dated: May 27, 2025

---

[4] The government does not address Ms. Giang's argument that the two instructional errors, taken together, require reversal. Taking both instructions together shows that these errors were not harmless. Br. 51

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

      this brief contains 3,871 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

      this brief has been prepared in a proportionally spaced typeface
using Microsoft Word and 14-point Book Antiqua font.

*/s/ Christine DeMaso*
Christine DeMaso

Attorney for Lilian Giang

Dated: May 27, 2025

## CERTIFICATE OF SERVICE

I, Christine DeMaso, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, including all counsel of record, specifically, Donald Campbell Lockhart, as identified on the Notice of Electronic Filing on May 27, 2025.

*/s/ Christine DeMaso*
Christine DeMaso